*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

THOMAS MOORMAN,

Defendant-Appellant.

FOR PUBLICATION
February 13, 2020
9:05 a.m.

No. 349282
Alger Circuit Court
LC No. 18-002287-FH

Before: SAWYER, P.J., and MARKEY and STEPHENS, JJ.

PER CURIAM.

Defendant, Thomas Moorman, appeals by leave granted an order denying his motion to suppress the evidence and dismiss the charges against him, including possession of alprazolam, MCL 333.7403(2)(b)(*ii*); possession of Ultram, MCL 333.7403(2)(b)(*ii*); obtaining a pistol without a license, MCL 750.232a(1); and carrying a concealed weapon (CCW), MCL 750.227. Defendant argues that the trial court erred by denying his motion to suppress pursuant to our recent decision, *People v Anthony*, 327 Mich App 24; 932 NW2d 202 (2019), because the odor of marijuana alone was insufficient to establish probable cause when defendant possessed a medical marijuana card in accordance with the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq*. We affirm.

## I. FACTUAL BACKGROUND

In November 2018, Trooper Allan Park of the Michigan State Police stopped defendant's vehicle for speeding. Park testified that when he approached defendant's vehicle, he smelled a strong odor of fresh marijuana emanating from the vehicle, which indicated to him that there was a "good quantity" of marijuana in the vehicle.

Defendant initially denied having any marijuana in the car. However, upon Park's further questioning, he stated that he had harvested marijuana earlier that day. Park testified that defendant claimed to have a medical marijuana card, but he could not recall whether defendant presented the card to him during the traffic stop. Defendant testified that he had produced a valid medical marijuana caregiver card to Park during the traffic stop and that he had five patients at the time. Park affirmed that the card's registration number was listed within the police report. The police report did not indicate when the card was presented.

-1-

Trooper Park testified that a search of the vehicle was performed to verify that defendant was within the regulated amount of two and a half ounces of medical marijuana. When asked what justification Park had for the search, he responded, "Just the odor of marijuana." After Park stated to defendant that he was going to search the vehicle because of the odor of marijuana, he asked whether defendant had any weapons in the vehicle. Defendant replied that he had a handgun and "slapp[ed] it on the dash of his truck." Park determined that defendant did not have a Michigan permit for the gun; however, defendant claimed he had a concealed pistol license (CPL) in Indiana. Defendant presented a Michigan driver's license and stated that he had lived in Michigan for at least a year. Park informed defendant that he was required to have a Michigan permit for the handgun and that Park would be seizing it. Defendant consented to a search of his person, which did not reveal any illegal contraband. Trooper Park then searched defendant's vehicle and found pills for which defendant did not have a prescription.

Defendant moved to suppress the evidence against him, arguing that the smell of marijuana alone does not provide probable cause to search a vehicle without other circumstances indicating that an individual possesses marijuana outside the allowable limits under the MMMA. Defendant further argued that the possession of a valid medical marijuana card eliminated any suspicion of criminal activity. Following a hearing and supplemental briefing concerning this Court's recent decision in *Anthony*, 327 Mich App 24, the trial court denied the motion, concluding that *Anthony* was dispositive.

## II. ANALYSIS

This Court reviews de novo a trial court's ruling on a motion to suppress. *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). "The trial court's factual findings are reviewed for clear error, and the underlying constitutional issues, including whether a Fourth Amendment violation occurred, are reviewed de novo." *People v Henry (After Remand)*, 305 Mich App 127, 137; 854 NW2d 114 (2014) (citation omitted). "A factual finding is clearly erroneous if it leaves the Court with a definite and firm conviction that the trial court made a mistake." *People v Steele*, 292 Mich App 308, 313; 806 NW2d 753 (2011).

Both the United States Constitution and the Michigan Constitution guarantee the right of the people to be free from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11; *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). "The lawfulness of a search or seizure depends on its reasonableness." *People v Beuschlein*, 245 Mich App 744, 749; 630 NW2d 921 (2001). Searches or seizures conducted without a warrant are per se unreasonable, subject to several well-delineated exceptions. *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996). Therefore, "[i]n order to show that a search was in compliance with the Fourth Amendment, the police must show either that they had a warrant or that their conduct fell within one of the narrow, specific exceptions to the warrant requirement." *Kazmierczak*, 461 Mich at 418. Generally, "evidence that is obtained in violation of the Fourth Amendment is inadmissible as substantive evidence in criminal proceedings." *People v Eaton*, 241 Mich App 459, 461; 617 NW2d 363 (2000).

A traffic stop does not violate the Fourth Amendment when a police officer has "an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law." *People v Williams*, 236 Mich App 610, 612; 601 NW2d 138 (1999). "[W]hen

a traffic stop reveals a new set of circumstances, an officer is justified in extending the detention long enough to resolve the suspicion raised." *People v Williams*, 472 Mich 308, 315; 696 NW2d 636 (2005). "[U]nder the automobile exception, the police may search a motor vehicle without the necessity of first obtaining a warrant if probable cause to support the search exists." *Kazmierczak*, 461 Mich at 418-419. In *Kazmierczak*, this Court held that "the smell of marijuana alone by a person qualified to know the odor may establish probable cause to search a motor vehicle, pursuant to the motor vehicle exception to the warrant requirement." *Kazmierczak*, 461 Mich at 413.

Defendant contends that the smell of marijuana alone was insufficient to establish probable cause for the warrantless search of defendant's vehicle when defendant presented a medical marijuana caregiver card to the officer, and that the trial court erred by relying solely on *Anthony* to support its denial of defendant's motion to suppress. Under the circumstances, we agree that the trial court erred by relying on *Anthony*, but we conclude that the trial court's decision was nonetheless proper under *Kazmierczak*.

In *Anthony*, we held that a police officer had probable cause to search a publicly parked vehicle when the strong odor of burned marijuana emanating from the vehicle suggested that the defendant had been using marijuana. *Anthony*, 327 Mich App at 45. We concluded that

> if the MMMA does not apply to a parked vehicle in a parking lot open to the public, then it likewise could not apply to a parked vehicle on a public street. Thus, because defendant used marijuana in his truck on a public street, the protections of the MMMA did not apply to defendant and *Kazmierczak* applied with full force to supply probable cause for the officers to search his vehicle. [*Id*. at 45-46.]

Defendant argues that this case is distinguishable from *Anthony* and we agree. *Anthony* specifically involved the defendant's unprotected conduct of *using* marijuana in a public place, while defendant in this case was in *possession* of marijuana in accordance with his caregiver card. Thus, further analysis is required.

In this case, defendant was a verified marijuana caregiver, which qualified defendant for protection under the MMMA. Defendant was in possession of marijuana in a permitted area. Trooper Park conducted a traffic stop after observing defendant speeding on a public highway. The MMMA appears to allow an individual to *possess* marijuana so long as the individual is not in a school bus, on the grounds of a preschool or primary or secondary school, or in any correction facility. See MCL 333.26427(b)(2)(A)-(C). Defendant was pulled over at a "pump station area," and the record does not indicate that defendant was present at any of these prohibited locations.

Thus, unlike in *Anthony*, the activity (possession versus use) was not inherently unprotected under the MMMA. But the analysis must then move to a second question: Did the trooper have probable cause to believe that the possession was unlawful because of the quantity involved? As a caregiver, defendant was allowed to possess a maximum amount of 2.5 ounces of marijuana per patient. MCL 333.26424(b)(1). Defendant made no statements indicating that he

-3-

possessed marijuana over his limit.[1]  But, we think that there exists an important fact that does give rise to probable cause to believe that defendant's possession was not in conformity with the MMMA.

As noted above, defendant initially denied the presence of any marijuana in the vehicle. This claim was inconsistent with Trooper Park's smelling of the odor of fresh marijuana. Accordingly, under *Kazmierczak*, that would give rise to probable cause to believe that defendant did possess marijuana *and* that he lied about it.  Furthermore, we believe that defendant's deception about the presence of marijuana in the vehicle would give rise to probable cause to believe that the amount possessed was greater than that permitted under the MMMA.  That is, if defendant's possession was lawful, it is reasonable to believe that he would simply admit to marijuana being in the vehicle and produce his registry card to establish its lawfulness.  But, if a person, even with a registry card, misrepresents that he has no marijuana in his possession then it is reasonable to believe that he is doing so because the amount he possesses is in excess of that permitted by the MMMA.

In reaching this conclusion, we find support in our Supreme Court's decision in *People v Champion*, 452 Mich 92; 549 NW2d 849 (1996).  In *Champion*, the police made an investigatory stop and subsequent frisk of the defendant.  *Id.* at 95.  During the pat down, the officer felt a pill bottle stuffed down the front of the defendant's sweatpants, which the officer seized and discovered it to contain cocaine.  *Id.*  This Court concluded that the seizure of the pill bottle was unlawful because it was not readily apparent that it contained contraband and, therefore, could not be seized under the plain-view doctrine.  *Id.* at 96-97.

In reversing, the Supreme Court found probable cause to be supported by a number of facts. Among these facts were that the defendant got out of his car and walked away upon seeing the officers, that the defendant had his hands tucked inside his sweatpants and refused to remove them, and that the pill bottle was found stuffed down the front of the defendant's sweatpants rather than being in a pocket.  *Id.* at 111-113.  In sum, the Court concluded that "the officer formed probable cause to arrest on the basis of the defendant's furtive behavior . . . ."  *Id.* at 117.

In applying that principle to this case, we conclude that defendant's behavior (denying the presence of marijuana) was inconsistent with being in lawful possession of marijuana under the MMMA.  This behavior, in conjunction with the odor of marijuana, gave rise to probable cause to believe that defendant was in possession of marijuana in a manner not consistent with the protections of the MMMA.  Accordingly, the search of the vehicle was lawful.[2]

---

[1] We do note that defendant was protected from arrest only if he presented his registry identification card and a driver's license or other government-issued identification.  MCL 333.26424(a).  There appears to be some dispute over exactly at what point during the encounter that defendant presented his registry card.  For purposes of this appeal, we will assume that he did so before the search took place.

[2] We would be remiss if we did not acknowledge that this is not the basis articulated by Trooper Park for conducting the search.  But the Fourth Amendment creates an objective, not subjective,

For these reasons, we conclude that, while the trial court erred in simply relying on *Anthony* without further analysis, the trial court's ultimate decision to deny defendant's motion to suppress was nonetheless proper. This Court will not reverse when the trial court reaches the right result for the wrong reason. See *People v Lyon*, 227 Mich App 599, 612-613, 577 NW2d 124 (1998).

To summarize, under *Kazmierczak*, "the smell of marijuana alone by a person qualified to know the odor may establish probable cause to search a motor vehicle, pursuant to the motor vehicle exception to the warrant requirement." *Kazmierczak*, 461 Mich at 413. Therefore, Trooper Park, who was experienced in marijuana arrests, had probable cause solely on the basis of the strong odor of fresh marijuana. *Kazmierczak* has not been overruled. See *Anthony*, 327 Mich at 44-45. But, as recognized in *Anthony*, the MMMA introduces the additional requirement that there must be a basis to believe that a suspect's actions, i.e., the use or possession of the marijuana, fall outside the protections of the MMMA. For the reasons discussed above, we conclude that Trooper Park did have probable cause to believe (1) that defendant possessed marijuana and (2) that that possession fell outside the protections of the MMMA.[3]

Affirmed.

/s/ David H. Sawyer
/s/ Jane E. Markey
/s/ Cynthia Diane Stephens

---

standard. *Devenpeck v Alford*, 543 US 146, 153; 125 S Ct 588; 160 L Ed 2d 537 (2004). In *Devenpeck*, the officer arrested the suspect for violation of the Washington Privacy Act upon discovering that Devenpeck was recording the conversation with the officer. 543 US at 149. The charges were dropped because it was determined that it was not, in fact, a violation of Washington law. *Id.* at 151. A civil lawsuit followed, ultimately reaching the Supreme Court. The Court concluded that the arrest did not violate the Fourth Amendment because, while the officer's subjective reason for making the arrest was incorrect, the arrest was lawful because the facts known to the officer at the time of arrest gave rise to probable cause to believe that the suspect had committed the crime of impersonating a police officer. *Id.* at 154-155. Accordingly, applying the principle that the Fourth Amendment establishes an objective standard to our case, because the facts known to Trooper Park established probable cause to believe that there was marijuana in the vehicle and that defendant was not covered by the protections of the MMMA, the search was reasonable. See also *Scott v United States*, 436 US 128, 138; 98 S Ct 1717; 56 L Ed 2d 168 (1978) ("the fact that the officer does not have the state of mind which is hypothecated by the reasons which provided the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.").

[3] Plaintiff also argues that the handgun found prior to the search is not subject to suppression under the fruit of the poisonous tree doctrine. Because we affirm the trial court's decision to deny defendant's motion to suppress and dismiss evidence, we conclude that it is unnecessary to address this argument.