*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

ROBERT ELIJAH ANTHONY,

Defendant-Appellee.

FOR PUBLICATION
January 22, 2019
9:00 a.m.

No. 337793
Wayne Circuit Court
LC No. 16-008132-01-FH

Before: GLEICHER, P.J., and BOONSTRA and TUKEL, JJ.

TUKEL, J.

Defendant was charged with unlawful possession of a firearm by a convicted felon and possession of ammunition by a convicted felon, MCL 750.224f. He also was charged with carrying a concealed weapon in a vehicle, MCL 750.227(2), and with possession of a firearm during the commission of a felony, MCL 750.227b. The charges arose from a search of defendant's car on August 30, 2016, during which police found a .45 caliber semi-automatic pistol on the floorboard of the car.

Following an evidentiary hearing, the trial court suppressed the firearm, finding that the justification for the search was pretextual, and then dismissed the case without prejudice. The prosecution appeals as of right. Because we find that the search complied fully with the Fourth Amendment and was supported by probable cause, we reverse the order suppressing the gun, vacate the order dismissing the case, and remand for further proceedings.

## I. BASIC FACTS

On August 30, 2016, Detroit Police Department Officer Richard Billingslea was on routine patrol with his partner, Hakim Patterson, in a fully marked scout car. The officers were in the area of 6304 Bluehill Street in Detroit when Officer Billingslea observed defendant's parked Ford F-150 pickup truck further up the street, facing in the direction from which the officers' car was coming. Officer Billingslea, who was the sole witness at the evidentiary hearing, testified that the F-150 was "parked in the middle of the street," by which, he testified, he meant that it was impeding traffic. The officers determined to investigate the alleged traffic offense and drove to where defendant's car was parked, pulling up alongside it. As they drove

down the street to the where the F-150 was, they did not have their overhead lights activated. As discussed below, the trial court expressly found that the officer's testimony that the F-150 was "parked in the middle of the street" was false, finding instead that "[i]t looks to me like it's on the other side of the street. It certainly is not in the video in the middle of the street. The police car is in the middle of the street."[1]

The officer testified that on that August evening, before dark, the windows of the police car were down; the F-150 had tinted windows, and at least one of them was partially down. The officer's testimony regarding the windows of both vehicles is confirmed by the videotape which is discussed below. As their car approached the area where defendant's car was parked, Officer Billingslea, while still inside the police car, immediately smelled a strong odor of burned marijuana. Officer Billingslea determined that he had probable cause to investigate possible offenses involving marijuana, and he and his partner then got out of the police car. They approached defendant's pickup on foot, determined that defendant was in the driver's seat, ordered him to roll his window down the rest of the way, and ordered him out of the truck. The officers handcuffed defendant and placed him in the backseat of the police car. A second individual who had been in the backseat of the F-150 also was ordered out of the truck, was investigated, and ultimately was released without charges. After the two men had been removed, the officers searched and found residue of smoked marijuana in a cupholder inside the truck. The police then continued their search, during which Officer Billingslea found the .45 caliber

---

[1] The trial court's factual findings are sparse. Where the trial court did not make express findings as to a particular point that is pertinent to our decision, we rely on testimony by the officer and refer to those aspects of his testimony which are corroborated by video evidence. In doing so, we are not making our own factual findings, but are merely describing the circumstances as reflected in the undisputed evidentiary record.

We accept the trial court's findings because they are not clearly erroneous. See MCR 2.613(C). Our analysis that the trial court erred in suppressing the gun turns on issues of law, not fact. Nevertheless, the dissent suggests that the trial court found Billingslea not credible with respect to him smelling marijuana. The trial court made no such finding, and in fact its ruling suggests the opposite. As detailed below, Officer Billingslea testified that he smelled marijuana coming from defendant's car—which the trial court recounted with no qualifications ("He approached the vehicle, and there was a strong odor of marijuana.")—and found ashes and residue inside the car although he did not seize that evidence relating to marijuana use. In reviewing the officer's testimony regarding the ashes, the trial court stated, "That's not really relevant for the purposes of this case." Yet, because it was the marijuana which the prosecution contended provided probable cause for the search, and no marijuana had been seized or offered as evidence at the evidentiary hearing, it is difficult to imagine that if the trial court did not believe Officer Billingslea's testimony regarding marijuana use, it would have failed to express its disbelief, even if it also believed that the evidence was not otherwise "really relevant for the purposes of this case." The dissent erroneously attributes the trial court's statement about the evidence being "not really relevant for the purposes of this case" to the marijuana *smell*. Instead, it is clear that the court only was referring to the *ashes and residue* that reportedly were found after a search of defendant's truck.

-2-

pistol. After arriving at the police station, the officer also wrote defendant a ticket for impeding traffic.

At some point after the occupants of the F-150 had been removed from it and the search had taken place, unidentified citizens began videotaping the events with their phones. One of the videotapes was introduced at the hearing and made part of the record.[2]

The trial court's ruling as to the legality of the search was as follows:

> Now, the officer says specifically -- he said on a number of occasions the vehicle was in the middle of the street and he implicated [sic] that it was impeding traffic, and that would have to be the basis for the detention that occurred.
>
> The officer did indicate that there was residue of marijuana in the cup holder. He said it was 100 percent marijuana. That's not really relevant for the purposes of this case. What I -- when I look at the video in People's Exhibit 1, that vehicle is not in the middle of the street. It looks to me like it's on the other side of the street. It certainly is not in the video in the middle of the street. The police car is in the middle of the street.
>
> Based on what this Court's already indicated, that would be pretext for the stop if the car would be in the middle of the street. In the video in People's Exhibit 1, it does not indicate that in the Court's opinion. So as a result, I believe that there was a violation of the Fourth Amendment pursuant to [*Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968)]. *There was not a reasonable suspicion to approach the vehicle* and the evidence garnered from that vehicle will be suppressed. [Emphasis added.]

## II. STANDARD OF REVIEW

"We review for clear error a trial court's findings of fact in a suppression hearing, but we review de novo its ultimate decision on a motion to suppress." *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). "A finding of fact is clearly erroneous if, after a review of the entire record, we are left with a definite and firm conviction that a mistake has been made." *People v Everard*, 225 Mich App 455, 458; 571 NW2d 536 (1997). "We review de novo whether the Fourth Amendment was violated and whether an exclusionary rule applies." *Hyde*, 285 Mich App at 436.

---

[2] The prosecution also attempted to admit the dashcam video from the officers' vehicle, but both the prosecution and defense counsel agreed that this particular video did not have "evidentiary value" for purposes of the hearing, so the trial court declined to admit it.

III.  ANALYSIS

A.  FOURTH AMENDMENT PRINCIPLES

"The Fourth Amendment [of the United States Constitution] provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .' " *Terry*, 392 US at 8.  The Michigan Constitution provides the same protection as the United States Constitution.  *People v Levine*, 461 Mich 172, 178; 600 NW2d 622 (1999).

> "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. . . .  Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification." [*People v Sinistaj*, 184 Mich App 191, 196; 457 NW2d 36 (1990), quoting *Florida v Royer*, 460 US 491, 497; 103 S Ct 1319; 75 L Ed 2d 229 (1983) (plurality opinion by WHITE, J.).]

The reason that officers may freely approach citizens on the street without implicating the Fourth Amendment is because "[t]he purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.' " *United States v Mendenhall*, 446 US 544, 553-554; 100 S Ct 1870; 64 L Ed 2d 497 (1980), quoting *United States v Martinez-Fuerte*, 428 US 543, 554; 96 S Ct 3074; 49 L Ed 2d 1116 (1976).  Rather, "[i]f there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed." *Royer*, 460 US at 498 (opinion by WHITE, J.).

In general, a "seizure" occurs for Fourth Amendment purposes when a reasonable person would have believed that he was not free to leave.  *Mendenhall*, 446 US at 544.  However, there are circumstances in which a person will not wish to leave, not because of actions by police but for the individual's own reasons; such a person is not "seized."  See *Florida v Bostick*, 501 US 429, 436; 111 S Ct 2382; 115 L Ed 2d 389 (1991).  Thus, a more precise definition of a seizure is "whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.  That rule applies to encounters that take place on a city street or in an airport lobby, and it applies equally to encounters on a bus." *Id.* at 439-440; see also *People v Shabaz*, 424 Mich 42, 66; 378 NW2d 451 (1985).  "[W]hat constitutes a restraint on liberty prompting a person to conclude that he is not free to 'leave' will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs," *Michigan v Chesternut*, 486 US 567, 573; 108 S Ct 1975; 100 L Ed 2d 565 (1988), which is why in determining whether a seizure occurred, a court must consider the totality of the circumstances.

Further, while the Michigan and United States Constitutions' protections against unreasonable searches and seizures generally require a warrant to search, see *Horton v*

*California*, 496 US 128, 133 n 4; 110 S Ct 2301; 110 L Ed 2d 112 (1990); *In re Forfeiture of $176,598*, 443 Mich 261, 265; 505 NW2d 201 (1993), several exceptions exist such that a warrant is not required. Relevant for the circumstances here, no warrant is required to search an automobile when the police have probable cause to believe that the vehicle contains contraband. *California v Acevedo*, 500 US 565, 569; 111 S Ct 1982; 114 L Ed 2d 619 (1991).

## B. APPLICATION

In the present case, the trial court's analysis that officers violated the Fourth Amendment hinged entirely on what it called "pretext" and was premised on the trial court's finding that no traffic offense had occurred. The crucial constitutional issue in this case, as it is undisputed that the officers *at some point* seized defendant, is when and how that seizure occurred. There are three possible points for that: when the officers drove down the street to investigate the F-150; when the officers arrived in the police car at the location where the F-150 was parked; or when the officers got out of the police car and removed defendant from his car. The trial court never explicitly reached a conclusion on this critical point, referring only to "pretext" for "the stop," stating that "[t]here was not a reasonable suspicion to approach the vehicle."[3] Because we review the decision whether to suppress evidence de novo, we consider each of the possibilities. None of the three alternatives would support a finding that the officers' actions were anything other than the consensual approach of officers to an individual in a public place.

## 1. DRIVING DOWN STREET TO WHERE F-150 WAS LOCATED

The officers' decision to drive down the street did not implicate the Fourth Amendment. An officer does not need any level of justification to approach an individual on a public street. Instead, reasonable suspicion is only needed to *detain* an individual for an investigative stop.[4] *Terry*, 392 US at 30-31; *People v Oliver*, 464 Mich 184, 193; 627 NW2d 297 (2001).

The trial court found that the F-150 was not in violation of traffic laws, leaving as the only logical alternative that it was lawfully and properly parked. If so, then there was no Fourth Amendment implication at all for officers to approach the car and to observe whatever could be discerned from outside it. See *People v Barbee*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 337515); slip op at 5 (stating that because the defendant did not have a reasonable expectation of privacy in a parked vehicle on a public street, "the Fourth Amendment was not implicated and there was no search at the point in time when the police pulled alongside the parked car and observed defendant's movements therein"). The officers needed no justification

---

[3] The trial court stated that "[t]here was not a reasonable suspicion to approach the vehicle and the evidence garnered from that vehicle will be suppressed," but as noted, officers approached the F-150 in two phases: first by driving to it, and then on foot from where they parked the police car. Either of those actions could be deemed an "approach."

[4] An investigative stop occurs when the police briefly detain an individual, based on reasonable suspicion of criminal activity, to confirm or dispel that suspicion. *People v Barbarich*, 291 Mich App 468, 473; 807 NW2d 56 (2011).

whatsoever to drive on a public street to where defendant's car was parked, and their doing so did not implicate the Fourth Amendment. *Id.* Because the officers needed no justification whatsoever to drive down the street, their individual motivation for going there can be of no constitutional significance. Simply put, by merely driving down the street, for whatever reason, the officers could not effectuate a seizure.[5] As the Supreme Court has held, evidence gathered by officers in such a situation is admissible absent their performing an action that constitutes a seizure. See *Royer*, 460 US at 497-498 (opinion by WHITE, J.) (stating that absent a seizure, evidence gathered by approaching an individual on the street may be "offer[ed] in evidence in a criminal prosecution" without offending the Fourth Amendment).

## 2. PARKING OF THE POLICE CAR IN PROXIMITY TO THE F-150

Because no seizure occurred when the officers drove down the street toward defendant's F-150, this means defendant was seized sometime afterward. See *People v Jenkins*, 472 Mich 26, 33-34; 691 NW2d 759 (2005) (noting that Fourth Amendment implications do not arise until "the earliest [point] at which a reasonable person might have concluded that he was not free to leave."). One such possibility is when the officers' vehicle arrived and parked at the location where the F-150 was parked.

Pulling up alongside the F-150 did not, without more, constitute a "traffic stop" because the F-150 was parked and thus not moving. "A traffic stop necessarily curtails the travel a passenger has chosen just as much as it halts the driver, diverting both from the stream of traffic to the side of the road." *Brendlin v California*, 551 US 249, 257; 127 S Ct 2400; 168 L Ed 2d 132 (2007); see also *id*. at 263 (stating that the defendant "was seized from the moment [the] car

---

[5] This is so even if one assumes that by using the word "pretext," the trial court was implying that Officer Billingslea's testimony was knowingly false in some respects. Certainly, nothing in our opinion should be taken as countenancing perjurious testimony by a law enforcement officer, and we note that any such witness in any case is subject to a range of criminal and administrative actions. However, a criminal defendant does not have the right to the suppression of physical evidence under the exclusionary rule if the testimony in question does not ultimately bear on the constitutional issue of whether the officer's actions were unreasonable. See *Davis v United States*, 564 US 229, 231; 131 S Ct 2419; 180 L Ed 2d 285 (2011) (stating that the exclusionary rule bars the introduction of evidence that was "obtained by way of a Fourth Amendment violation"); *People v Hawkins*, 468 Mich 488, 498-499; 668 NW2d 602 (2003) ("The exclusionary rule . . . generally bars the introduction into evidence of materials seized and observations made during an unconstitutional search."). Indeed, our Supreme Court has stated:

> [T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action. [*People v Arterberry*, 431 Mich 381, 384; 429 NW2d 574 (1988), quoting *Scott v United States,* 436 US 128, 138; 98 S Ct 1717; 56 L Ed 2d 168 (1978).]

came to a halt on the side of the road"). Therefore, no seizure occurred simply by virtue of driving up and parking alongside the F-150.

Moreover, if the F-150 was lawfully parked, as the trial court found and as the dissent emphasizes, defendant's expectation of privacy inside it, parked on a public street, was no greater than if he had been driving on a public street, as pedestrians and police officers could approach and look into his vehicle. *Barbee*, ___ Mich App at ___; slip op at 5; see also *United States v Gooch*, 499 F3d 596, 603 (CA 6, 2007). "One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view." *United States v Knotts*, 460 US 276, 281-282; 103 S Ct 1081; 75 L Ed 2d 55 (1983). "There is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." *Texas v Brown*, 460 US 730, 740; 103 S Ct 1535; 75 L Ed 2d 502 (1983) (citations omitted); see also *Knotts*, 460 US at 282-283 ("A person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.").

Whatever else he did or did not do, Officer Billingslea did not interfere with or impede any ongoing driving by defendant; at most, his actions could have affected future driving by defendant, necessitating a different analysis. Simply referring to what took place as a "traffic stop," as if Officer Billingslea had pulled defendant over, is simply incorrect. The error is significant, as "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren v United States*, 517 US 806, 809-810; 116 S Ct 1769; 135 L Ed 2d 89 (1996). Thus, by characterizing the encounter as a "traffic stop," the trial court and the dissent necessarily preclude the possibility that the encounter was consensual, as every traffic stop constitutes a "seizure." That analytical approach is erroneous as a matter of law. See, e.g., *Bostick*, 501 US at 439-440.[6]

That brings us to the manner in which the officers parked their car. It is undisputed, and the trial court found, that the police car was parked alongside the F-150. Again, however, the parking of the police car in such a manner does not constitute a seizure of the F-150 unless it blocked the F-150's path of egress. *United States v Carr*, 674 F3d 570, 572-573 (CA 6, 2012).

The dissent nonetheless claims that, although the officers pulled alongside defendant's vehicle, defendant objectively would have understood that he was not free to leave based solely on the proximity (within five feet of and parallel to defendant's F-150) of the police car. Again, the dissent's position is incorrect as a matter of law. The standard for determining whether an

---

[6] Focusing on this error is not "nit-pick[ing] the trial court's opinion," as the dissent would have it, because that focus, although brief in its opinion, led directly to the trial court using an erroneous legal standard.

individual would have felt free to leave under such circumstances, as the Sixth Circuit Court of Appeals has repeatedly held, is whether the person's parked car was "blocked" in:

> As a threshold matter, the stop was consensual at the point where the officers parked their unmarked police car near Carr's Tahoe. A "consensual encounter" occurs when "a reasonable person would feel free to terminate the encounter." *United States v Drayton*, 536 US 194, 201; 122 S Ct 2105; 153 L Ed 2d 242 (2002). This court has analyzed similar civilian-police encounters by determining whether the police vehicle *blocked* the defendant's egress. See, e.g., *United States v See*, 574 F3d 309, 313 (CA 6, 2009); *United States v Gross*, 662 F3d 393, 399-400 (CA 6, 2011). As the concurrence in *See* suggested, *unless there is other coercive behavior, a police officer can initiate a consensual encounter by parking his police vehicle in a manner that allows the defendant to leave. See*, 574 F3d at 315 (Gilman, J., concurring). Here, the police officers parked their unmarked, black Ford Explorer at an angle in front of Carr's Tahoe. The angle of the police vehicle gave Carr sufficient room to drive either forward or backward out of the carwash bay. Although pulling forward would have required "some maneuvering" for Carr to get around the Explorer, "there was enough room that [Carr] could have just merely steered around [the Explorer]." As one of the officers testified, Carr had "ample room to steer and maneuver around our vehicle." Because the police vehicle allowed Carr to exit the carwash, albeit with "some maneuvering," Carr's car was not blocked for Fourth Amendment purposes. *To conclude otherwise would be an endorsement of a "simplistic, bright-line rule" that a detention occurs "any time the police approach a vehicle and park in a way that allows the driver to merely drive straight ahead in order to leave."* [*Carr*, 674 F3d at 572-573 (emphasis added).]

In fact, *Carr* held that notwithstanding the manner in which the police car was parked *and* even though, unlike in this case, the officers had activated their overhead lights, the encounter nevertheless was consensual for Fourth Amendment purposes: "The officers' use of blue lights was not sufficiently coercive to transform this encounter into a compulsory stop." *Id*. at 573. Instead, only if officers completely block a person's parked vehicle with a police vehicle is the person seized. *Id.* Thus, the dissent errs as a matter of law by relying on the manner in which the police car was parked as somehow conveying the message that defendant was not free to pull away, despite the fact that defendant's vehicle was not blocked in. The photograph on which the dissent relies, taken from the video, shows that defendant could have driven forward or in reverse to leave, with little maneuvering, let alone "with some maneuvering." *Id*. Defendant's vehicle was not blocked in; the police car was parked beside it. Thus, the manner in which the police car was parked did not constitute a seizure.

The dissent appears to endorse the "simplistic, bright-line rule," which *Carr* rejected, and further errs by eliding objective evidence, whether defendant's car was blocked in, with what officers subjectively might have thought or done under different circumstances, which is an improper consideration.

Finally, whether defendant had broken any laws in parking his truck—regardless of Billingslea's subjective thoughts—is irrelevant, in light of the fact that the encounter never lost

its consensual character.[7] The issue of whether or not defendant had broken traffic laws, or at least whether there was reasonable suspicion to believe that he had done so, might be relevant if necessary to justify a *Terry* stop; but the actions here never rose to that level. Because we accept the trial court's finding that defendant was lawfully parked, as that finding was not clearly erroneous, the analysis here demonstrates that the encounter never lost its consensual character and thus was lawful.

### 3. APPROACH ON FOOT AND REMOVAL OF DEFENDANT FROM F-150

The undisputed evidence reflects that upon arriving in their police car in the vicinity of defendant's F-150, Officer Billingslea immediately smelled the strong odor of marijuana and at that point determined to search the vehicle on that basis.[8] Given our conclusion that the encounter was consensual up to that point, the officers thus had probable cause to search defendant's vehicle *before* any seizure under the Fourth Amendment occurred.[9] See *People v Kazmierczak*, 461 Mich 411, 421; 605 NW2d 667 (2000) (stating that odor of contraband, standing alone, can be sufficient to justify a finding of probable cause if smelled by a qualified person). Additionally, as previously stated, because of the motor vehicle exception to the search warrant requirement, the officer was not required to obtain a search warrant. *Id.* at 422. Accordingly, we hold that because there was probable cause to search the F-150, the items seized in the search were properly found and there is no basis for suppressing the results of the search at defendant's trial.

---

[7] While basing its analysis on those facts, the dissent nevertheless stresses subjective factors, which properly have no role here, stating "Billingslea specifically and repeatedly asserted that Anthony was illegally parked and that the officers were stopping in order to investigate the violation." However, Fourth Amendment principles are judged on the basis of objective evidence, not an officer's subjective motivations. See *Whren*, 517 US at 813 ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); see also *California v Hodari D*, 499 US 621, 627-628; 111 S Ct 1547; 113 L Ed 2d 690 (1991) ("[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."); *id.* ("*Mendenhall* establishes that the test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person.").

[8] The trial court did not question that the officers smelled marijuana. See Note 1, *supra*.

[9] According to the undisputed testimony, Officer Billingslea smelled marijuana from inside the police car, and he then ordered defendant out of the F-150. Ordering defendant out of the F-150 constituted the seizure, but at that point, as the officer correctly noted, probable cause to search the vehicle existed. That analysis would not change even if the officer did not smell the marijuana until he approached on foot because, as noted, merely approaching a parked vehicle does not constitute a seizure.

The Michigan Supreme Court's opinion in *People v Freeman*, 413 Mich 492; 320 NW2d 878 (1982), further illustrates why suppression was erroneous in the present case. In *Freeman*, two officers saw a parked car in the middle of the night, with its engine running. *Id.* at 493. The officers "approached the car and asked the defendant, who was alone and occupied the driver's seat, to leave the vehicle and to produce identification and a registration." *Id.* at 493-494. By ordering him out of the car, the officers thus "detained him," which constituted "a seizure which led to discovery of the pistol." *Id.* at 493. The search in *Freeman* thus was unlawful because the officers seized the defendant in an investigative stop *before* having reasonable suspicion that criminal activity was afoot. *Id.* at 496. Here, as in *Freeman*, the officers approached the car and ordered defendant out; of course, just as in *Freeman*, ordering defendant out constituted a seizure. The difference between this case and *Freeman* is that prior to ordering defendant out of his car, officers here had probable cause to search (and reasonable suspicion to detain) based on the smell of marijuana; in *Freeman*, there was no reasonable suspicion of any criminal activity, and the discovery of evidence justifying a search took place *after* the defendant had been seized, necessarily invalidating any search based on that evidence.

In sum, the trial court erroneously disregarded the fact that the officers' approach to defendant did not implicate the Fourth Amendment, and it erroneously disregarded the basis that Officer Billingslea gave for conducting the actual search of the vehicle, which was the evidence of marijuana emanating from defendant's vehicle. The officers' subjective reasons for stopping alongside the F-150 are irrelevant because regardless of intent, the police could do so in the manner in which they did without offending the Fourth Amendment. Further, while at that lawful vantage point, the officer smelled marijuana—all before any seizure occurred—which gave the officers probable cause to search the F-150 without a warrant. Consequently, the trial court erred when it excluded the evidence seized during the search on the basis that the officers needed to have a valid justification to stop next to defendant's vehicle on a public street, and we reverse the trial court's order suppressing the evidence seized.

## C. MEDICAL MARIJUANA ACT

Defendant argues an alternate reason to affirm the trial court. Defendant claims that in light of the passage of the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.*, the smell of burned marijuana cannot justify criminal investigation. Defendant maintains that the more recent passage of the MMMA calls into question the Michigan Supreme Court's prior holding in *Kazmierczak*, which allows the smell of marijuana alone to establish probable cause. See *Kazmierczak*, 461 Mich at 421.

Before we decide the merits of defendant's argument, we must first determine whether we even have authority, were we to agree with defendant, to rule in the manner he asks, i.e., to not follow a decision of our Supreme Court. It is assuredly the case that "[t]he Court of Appeals is bound to follow decisions by [the Supreme] Court except where those decisions have clearly been overruled or superseded and is not authorized to anticipatorily ignore our decisions where it determines that the foundations of a Supreme Court decision have been undermined." *Associated Builders & Contractors v City of Lansing*, 499 Mich 177, 191-192; 880 NW2d 765 (2016) (emphasis omitted). It is clear that in the context in which our Supreme Court used the word "superseded," it was including legislative actions that change the state of the law. See *id.* at 192 ("The Court of Appeals erred, however, by disregarding precedent from this Court that

has not been clearly overruled by the Court or *superseded by subsequent legislation* or constitutional amendment.") (emphasis added). Thus, we do have authority to consider not adhering to *Kazmierczak*'s holding if the MMMA changed the law and thereby undermined the basis for *Kazmierczak*. Defendant argues that the MMMA did change what constitutes a marijuana offense, or at least what constitutes a defense to a charge involving marijuana, such that *Kazmierczak*, which was based on earlier law defining marijuana offenses, consequently is no longer fully applicable.

However, defendant's argument is not persuasive because the MMMA provides that its limited license for qualifying patients to use marijuana does not extend to activity occurring in "any public place." MCL 333.26427(b)(3)(B). This Court has held that a person using marijuana in a parked car in a parking lot open to the public[10] is in a "public place" within the meaning of the MMMA. *People v Carlton*, 313 Mich App 339, 347-349; 880 NW2d 803 (2015). Accordingly, if the MMMA does not apply to a parked vehicle in a parking lot open to the public, then it likewise could not apply to a parked vehicle on a public street. Thus, by using marijuana in his truck on a public street, the protections of the MMMA did not apply to defendant and *Kazmierczak* applied with full force to supply probable cause for the officers to search his vehicle.[11]

We reverse the order suppressing the firearm. And because the order of dismissal was predicated on the suppression of the evidence, we vacate the order of dismissal and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jonathan Tukel
/s/ Mark T. Boonstra

---

[10] The Court noted that even private property qualifies as long as it was open for use by the general public.

[11] We need not determine to what extent the passage of the MMMA might have undercut *Kazmierczak*'s holding with respect to any non-public places and offer no opinion on that issue. For similar reasons, the recently enacted Michigan Regulation and Taxation of Marihuana Act (MRTMA), MCL 333.27951 *et seq*., would not apply to defendant. See MRTMA, § 4.1. Moreover, "[u]sually in appellate review, we look to the law as it was at the time of the judicial or administrative action from which appeal is taken," *Ann Arbor Bank & Trust Co v Comm'r Fin Inst Bureau*, 85 Mich App 131, 136; 270 NW2d 725 (1978), and statutory or constitutional amendments are presumed to apply prospectively only absent clear language in them to the contrary, *Brewer v A D Transp Express, Inc*, 486 Mich 50, 55-56; 782 NW2d 475 (2010). Thus, we also need not determine and therefore express no opinion on whether the MRTMA has retroactive application or to what extent the passage of the MRTMA might have undercut *Kazmierczak*'s holding with respect to any non-public places.