*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

V

CHARLIE JAWAN JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
July 23, 2020

No. 346239
Wayne Circuit Court
LC No. 18-000913-01-FH

Before: METER, P.J., and BECKERING and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of breaking and entering a building with intent to commit a felony ("breaking and entering"), MCL 750.110, two counts of larceny in a building, MCL 750.360, malicious destruction of a building causing damage of $1,000 or more but less than $20,000 ("malicious destruction"),[1] MCL 750.380(3)(a), and possession of burglar's tools, MCL 750.116. The trial sentenced defendant to prison terms of 3 to 10 years for each breaking and entering conviction, two to four years for each larceny conviction, two to five years for the malicious destruction conviction, and 3 to 10 years for the possession of burglar's tools conviction. We affirm.

Defendant's convictions arise from break-ins at two homes on Cherry Hill Street in Dearborn Heights late on January 10, 2018, or early on January 11, 2018. One of the homes was owned by Joseph Isgro ("the Isgro house"), and the other home was cared for by Belal Nasser ("the

---

[1] We note that in defendant's supplemental brief on appeal, he stated that the prosecution reviewed the trial court's case file and discovered that the jury's verdict form indicated that the jury found defendant not guilty on count 6, a second count of malicious destruction, despite the jury's verbal guilty verdict at trial. We ordered that the case be remanded for resolution of this discrepancy. *People v Johnson*, unpublished order of the Court of Appeals, entered April 17, 2020 (Docket No. 346239). On remand, the trial court entered a second amended judgment of sentence removing the guilty verdict as to count 6. Because this issue has been resolved, we will not further address defendant's request to remand for correction of his judgment of sentence.

Nasser house"). The neighborhood where the break-ins occurred had complained of larcenies and thefts to the Dearborn Heights Police Department. Lieutenant Timothy Zawacki was on patrol in the neighborhood around 2:40 or 2:44 a.m. when he noticed an unoccupied vehicle "parked practically on top of a street sign." Around 4:00 a.m., Sergeant Patrick Thomas was on patrol in the neighborhood and noticed the same vehicle parked near the stop sign.

While Sergeant Thomas was near the vehicle, he observed defendant walking past the vehicle with a backpack of tools. Sergeant Thomas asked defendant where he was walking and for defendant's address. Defendant did not provide an address, so Sergeant Thomas radioed other police officers because he thought defendant might run. Sergeant Thomas also asked if he could see defendant's backpack. Defendant obliged, and Sergeant Thomas saw about 16 tools, including pliers, screwdrivers, a torch, and pry bars, which Sergeant Thomas knew, based on his training and experience, were consistent with burglar's tools.

Once additional police officers arrived, Lieutenant Zawacki and Sergeant Thomas found footprints leading to the Isgro house, which had been broken into. Copper plumbing had been cut, bundled, and piled near the back door. Furnace parts were also nearby in the kitchen. Sergeant Thomas observed footprints that appeared to match those found outside near the top of the stairs leading to the basement, and again in the basement. Sergeant Thomas also found the same footprint in an otherwise clean bathtub under an unlocked window.

On January 11, 2018, around noon, Nasser discovered that the front door of the Nasser home was unlocked, and that the copper pipes in the basement had been removed. Although there were muddy footprints in the home when Nasser discovered the break-in, he had cleaned most of the house because he had a home showing scheduled for that day.

At trial, defendant was convicted of the crimes stated above, and sentenced. This appeal follows.

## I. SUBSTITUTION OF COUNSEL

Defendant first argues that when he requested substitute counsel at one of the initial hearings in circuit court, the judge did not sufficiently address his concerns about defense counsel and should have conducted further inquiry. We disagree.

This Court reviews a trial court's decision regarding substitution of counsel for an abuse of discretion. *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Pointer-Bey*, 321 Mich App 609, 615; 909 NW2d 523 (2017) (quotation marks and citation omitted).

" 'When a defendant asserts that the defendant's assigned attorney is not adequate or diligent, or is disinterested, the trial court should hear the defendant's claim and, if there is a factual dispute, take testimony and state its findings and conclusion on the record.' " *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011), quoting *People v Bauder*, 269 Mich App 174, 193; 712 NW2d 506 (2005), overruled in part on other grounds in *People v Burns*, 494 Mich 104, 112-113 (2013). Addressing the substitution of counsel, this Court has explained:

An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. [*Traylor*, 245 Mich App at 462.]

"Good cause may exist when 'a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic,' when there is a 'destruction of communication and a breakdown in the attorney-client relationship,' or when counsel shows a lack of diligence or interest." *People v McFall*, 309 Mich App 377, 383; 873 NW2d 112 (2015) (citations and footnotes omitted). Good cause is not demonstrated merely because the defendant is generally unhappy with counsel or lacks confidence in counsel. *Id.* Counsel's decisions about defense strategy, including what witnesses to call, what evidence to present, and what arguments to make, are matters of strategy; disagreements regarding trial strategy do not merit appointment of substitute counsel. *Strickland*, 293 Mich App at 398.

The record in this case does not show that defendant's attorney was in fact "inattentive to his responsibilities, inadequate, or disinterested." *People v Buie*, 298 Mich App 50, 69; 825 NW2d 361 (2012) (quotation marks and citation omitted). Defendant claimed on the record that defense counsel had failed to disprove the information in the police report. The trial court listened to defendant's complaint and asked follow-up questions. The court then explained that defense counsel's opportunity to challenge the evidence and establish reasonable doubt would come at trial. This record demonstrates that the trial court directly addressed defendant's concerns about defense counsel's diligence, which it concluded were premature. Cf. *People v Wilson*, 43 Mich App 459, 462; 204 NW2d 269 (1972). Absent good cause resulting from a lack of diligence, the trial court did not abuse its discretion by refusing defendant's request for substitute counsel on this basis. *McFall*, 309 Mich App at 383.

In addition, and although defense counsel had already demanded further discovery from the prosecutor, defendant requested "forensic evidence." Again, the trial court repeatedly asked defendant what evidence he was referencing and then, after conducting a sidebar conference with the attorneys off the record, the trial court entered a reciprocal discovery order. This was an appropriate response to defendant's concerns about discovery. Defendant failed to establish good cause for the substitution of his attorney on this basis.

Defendant also argued that he and defense counsel lacked adequate communication. The record demonstrates that, by the time that defendant voiced his complaints, defense counsel and defendant had discussed issues relevant to that particular hearing, including the plea offer and bond. Defendant's only cited reason for the lack of communication involved a rote administrative mechanism, not a fundamental trial tactic, and the trial court was able to convey the information about the blind draw to defendant. Moreover, the trial court encouraged defendant to continue communicating with defense counsel and defendant failed to raise a similar complaint about communication with counsel during the following six months before trial began. Again, the trial court acknowledged and addressed defendant's concern, which did not amount to good cause. *McFall*, 309 Mich App at 383. Therefore, the trial court did not abuse its discretion by refusing defendant's request for substitute counsel on this basis.

Absent any good cause for substitution of counsel, defendant's argument that substitution would not have unreasonably disrupted the judicial process at that early stage of the proceedings is unpersuasive. Again, an indigent defendant is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. "Appointment of a substitute counsel is warranted *only* upon a showing of good cause *and* where substitution will not unreasonably disrupt the judicial process." *Traylor*, 245 Mich App at 462 (emphasis added).

## II. EFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant raises three claims charging that defense counsel was ineffective. Defendant did not raise these claims in the trial court and this Court denied defendant's motion to remand for a *Ginther*[2] hearing. *People v Johnson*, unpublished order of the Court of Appeals, entered September 26, 2019 (Docket No. 346239). Therefore, review of defendant's claims of ineffective assistance of counsel is limited to errors apparent from the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004); *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000).

The United States and Michigan Constitutions guarantee a defendant the right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. We review de novo the constitutional question whether defendant was deprived of his right to the effective assistance of counsel. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). To establish ineffective assistance of counsel, defendant must show: (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 US at 694.

### A. PLEA

Defendant argues that defense counsel was ineffective by failing to adequately advise him to enable him to make an informed and voluntary choice between trial and a guilty plea. He asserts in a self-serving affidavit submitted on appeal that if defense counsel had provided further information about the sentencing consequences of going to trial, he would have accepted the plea offer. We disagree.

While a defendant does not have the right to receive a plea offer from the prosecution, *Lafler v Cooper*, 566 US 156, 168; 132 S Ct 1376; 182 L Ed 2d 398 (2012), "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused," *Missouri v Frye*, 566 US 134, 145; 132 S Ct 1399; 182 L Ed 2d 379 (2012). "The decision to plead guilty is the defendant's, to be made after consultation with counsel and after counsel has explained the matter to the extent reasonably necessary to permit the client to make an informed decision." *People v Corteway*, 212

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Mich App 442, 446; 538 NW2d 60 (1995). Trial counsel is not required to recommend whether to accept a plea offer; instead, "[t]he test is whether the attorney's assistance enabled the defendant to make an informed and voluntary choice between trial and a guilty plea." *Id*.

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. [*Frye*, 566 US at 147.]

Defendant claims that defense counsel was deficient because defendant did not understand that he could face a prison sentence if convicted at trial. The record does not support this claim. It was clear from the felony complaint that defendant's maximum penalty for the various charged crimes ranged from 4 to 15 years in prison. In addition, during pretrial discussions on the record, the trial court advised defendant that, even under the proposed plea agreement, his minimum sentencing guidelines range included up to 17 months' incarceration. The trial court also advised defendant that if he was convicted at a jury trial, his sentence could be "more severe."

Defendant also claims that he was unaware that the trial court could exceed the sentencing guidelines range. Again, the record establishes otherwise. Defense counsel clearly stated on the record that the guidelines were only "advisory," which indicated that they served as a recommendation, but were not mandatory. The trial court advised defendant that, for purposes of the plea, his sentencing guidelines range was 0 to 17 months. The court also stated that it was inclined to sentence him to 120 days in jail with a period of probation, but it warned him that after a trial, "the sentencing consequences could be more severe." On this record, defendant cannot establish that he was not able to make an informed and voluntary choice between trial and a guilty plea.

Furthermore, defendant cannot establish the requisite prejudice. In an affidavit supporting his motion to remand, defendant asserts that he would never have rejected the plea offer if he knew that he could face 3 to 10 years in prison. But defendant's self-serving affidavit is not part of the lower court record and cannot be considered on appeal. *People v Williams*, 241 Mich App 519, 524 n 1; 616 NW2d 710 (2000) (providing that parties may not expand the lower court record by attaching affidavits to their briefs on appeal). In any event, the record demonstrates that defendant consistently maintained his innocence throughout the proceedings. After the proposed plea was placed on the record, defense counsel asserted that defendant wanted to proceed to trial. When the trial court then informed defendant of the potential for a more severe sentence if he "roll[ed] the dice" and went to trial, defendant asserted that he "wasn't there," so there could be no evidence against him. The court asked defendant, "You weren't there at all?" Defendant replied, "I wasn't." Then, the trial court stated, "Well, all right, then, I guess there's no point in talking to you about a plea. All right." At sentencing, defendant continued to maintain his innocence. Although defendant initially offered an apology to the parties and to his family for his actions, he later

claimed that he "didn't do it" and that his fingerprints were nowhere in the homes at issue. On this record, defendant cannot establish that there is a reasonable probability that he would have accepted the guilty plea and therefore enjoyed a shorter sentence. Cf. *Lafler*, 566 US 174. Defendant was not denied the effective assistance of counsel on this basis.

## B. MOTION TO SUPPRESS

Defendant argues that defense counsel was ineffective by failing to file a motion to suppress the evidence resulting from various stages of Sergeant Thomas's interaction with defendant and the ensuing investigation, which defendant alleges were unconstitutional. These stages include: (1) pulling up to defendant in a patrol car and asking where he was headed, (2) radioing other officers from the patrol car to inform them who he was with, (3) asking defendant what was in his backpack and if he could look inside, and (4) detaining defendant in the patrol car. We conclude that defense counsel's performance did not fall below an objective standard of reasonableness.

The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. "Searches and seizures conducted without a warrant are unreasonable per se, subject to several specifically established and well-delineated exceptions." *People v Borchard-Ruhland*, 460 Mich 278, 294; 597 NW2d 1 (1999). "Generally, evidence obtained in violation of the Fourth Amendment is inadmissible as substantive evidence in criminal proceedings." *People v Kazmierczak*, 461 Mich 411, 417-418; 605 NW2d 667 (2000).

In *People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005), our Supreme Court discussed one exception to the warrant requirement, a *Terry*[3] stop:

> Under certain circumstances, a police officer may approach and temporarily detain a person for the purpose of investigating possible criminal behavior even though there is no probable cause to support an arrest. A brief detention does not violate the Fourth Amendment if the officer has a reasonably articulable suspicion that criminal activity is afoot. Whether an officer has a reasonable suspicion to make such an investigatory stop is determined case by case, on the basis of an analysis of the totality of the facts and circumstances. A determination regarding whether a reasonable suspicion exists must be based on commonsense judgments and inferences about human behavior. [Quotation marks and citations omitted.]

To evaluate whether an officer has reasonable suspicion to make an investigatory stop, the "totality of the facts and circumstances" is considered on a case-by-case basis. *People v Horton*, 283 Mich App 105, 109; 767 NW2d 672 (2009).

The Court in *Jenkins* contrasted a *Terry* stop with a consensual encounter, which is not a seizure:

---

[3] *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

Of course, not every encounter between a police officer and a citizen requires this level of constitutional justification. A "seizure" within the meaning of the Fourth Amendment occurs only if, in view of all the circumstances, a reasonable person would have believed that he was not free to leave. When an officer approaches a person and seeks voluntary cooperation through noncoercive questioning, there is no restraint on that person's liberty, and the person is not seized. [*Jenkins*, 472 Mich at 32 (citations omitted).]

Consent must be freely and voluntarily given, and "[t]he presence of coercion or duress normally militates against a finding of voluntariness." *Borchard-Ruhland*, 460 Mich at 294. "The reason that officers may freely approach citizens on the street without implicating the Fourth Amendment is because '[t]he purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.' " *People v Anthony*, 327 Mich App 24, 32-33; 932 NW2d 202 (2019), quoting *United States v Mendenhall*, 446 US 544, 553-554; 100 S Ct 1870; 64 L Ed 2d 497 (1980) (quotation marks and citation omitted).

In *People v Sinistaj*, 184 Mich App 191, 196; 457 NW2d 36 (1990), this Court, quoting *Mendenhall*, 446 US at 554, cited examples that the United States Supreme Court had offered of circumstances that might constitute a seizure, even where the person made no attempt to leave: " '[T]he threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.' "

Defendant argues that defense counsel should have moved to suppress the evidence based on Sergeant Thomas's initial questioning on the street, when Sergeant Thomas, who was in his patrol car, asked defendant, who was on foot, where he was heading. We disagree. Defendant voluntarily responded that he lived "up the street." This questioning did not constitute a seizure. *Jenkins*, 472 Mich at 32 ("A police officer's brief and noncoercive questioning, or mere request for identification, does not constitute a seizure of the person asked."). There is no evidence of coercion or duress. Because any motion to suppress on this basis would have been futile, defense counsel was not ineffective on this basis. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

Defendant next argues that defense counsel should have moved to suppress the evidence on the basis of Sergeant Thomas's subsequent call to other units, informing them who he was with. We disagree. The record demonstrates that Sergeant Thomas was inside his patrol car when he made the call and defendant was outside on the street. It is unclear from the record if defendant even heard the call. In any event, Sergeant Thomas was not interacting with defendant at that moment.[4] No objective facts suggest that a reasonable person would believe he was not free to

---

[4] Sergeant Thomas's subjective motivation—that he thought defendant might run—is not relevant to the Fourth Amendment analysis. *Anthony*, 327 Mich App at 41 n 7. The objective test is whether an officer's words and actions would have conveyed to a reasonable person that he was being ordered to restrict his movement. *Id.*

leave or that his egress was blocked in any way. See *Anthony*, 327 Mich App at 39-40. The record merely establishes that defendant did not walk or run away. Instead, he stood by what the police later learned was his car. Because this challenged portion of the facts does not implicate the Fourth Amendment or even an encounter between the police and defendant—as opposed to an encounter between the police on the radio—a motion to suppress predicated on this encounter would have been futile. Defense counsel was not ineffective on this basis. *Ericksen*, 288 Mich App at 201.

Defendant also argues that defense counsel should have filed a motion to suppress the evidence on the basis of Sergeant Thomas's subsequent observations involving defendant's backpack. We disagree. When Sergeant Thomas saw defendant's backpack with a pry bar sticking out of it, he asked defendant what was inside and if he could see it. Defendant handed it over. Again, there is no evidence of force or coercion. Defendant cooperated with Sergeant Thomas when asked about the backpack. Therefore, this encounter was consensual. Defense counsel was not ineffective for failing to file a motion to suppress regarding a consensual encounter. *Id.*

Defendant's last claim is that defense counsel should have filed a motion to suppress the evidence because Sergeant Thomas lacked reasonable suspicion to detain defendant in the patrol car. We disagree. Defendant was in a neighborhood with a high burglary rate in the middle of the night and he was not only carrying a pry bar, but other tools that two officers testified were known to be burglary tools. Further, defendant initially claimed that he lived in the area, but he then changed his answer to say that he was there to meet a girl. The change of story and the fact that defendant was carrying a bag of tools at night to meet a girl further peaked the officers' suspicions. In addition, although defendant claimed to have communicated with the girl on his cellular telephone and offered the telephone to the police, there was no evidence of related calls or text messages. Instead, defendant had photographs of an air-conditioning unit and a furnace on his telephone. Also, during this interaction, defendant appeared to be nervous. While some of these facts are admittedly capable of an innocent explanation, the totality of these factors, including the observation that defendant was carrying a bag containing common burglar's tools, created particularized suspicion that defendant was involved in criminal activity—namely, possession of burglar's tools. *People v Steele*, 292 Mich App 308, 315; 806 NW2d 753 (2011) ("[D]eference should be given to the experience of law enforcement officers and their assessments of criminal modes and patterns.") (citations omitted). Defense counsel was not ineffective for failing to make a futile motion to suppress the evidence resulting from this constitutional seizure. *Ericksen*, 288 Mich App at 201.

## C. DETECTIVE'S CREDIBILITY ASSESSMENT DURING INTERVIEW

Defendant argues that defense counsel was ineffective for failing to object to Detective Sergeant Nicholas Hutchens's testimony about inconsistencies in defendant's statements during his interview. We disagree.

MRE 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." MRE 704.

By contrast, in *People v Musser*, 494 Mich 337, 349; 835 NW2d 319, 327 (2013), our Supreme Court explained:

> Because it is the province of the jury to determine whether "a particular witness spoke the truth or fabricated a cock-and-bull story," it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial. Such comments have no probative value, because "they do nothing to assist the jury in assessing witness credibility in its fact-finding mission and in determining the ultimate issue of guilt or innocence." [Citations omitted.]

Contrary to defendant's assertion, Detective Hutchens did not comment on the credibility of a witness who testified at trial. Rather, he was testifying about inconsistencies revealed during his interview with defendant. Detective Hutchens's opinion—that, during the interview, defendant lied about the tools and when he arrived in the neighborhood—was rationally based on his perception of the interview and the ongoing investigation. Defendant claimed to be in the neighborhood to meet a girl, but he had no explanation for bringing a bag full of tools with him to meet the girl other than that he carried them everywhere. Although defendant claimed that he arrived in the neighborhood around 3:30 a.m., Detective Hutchens knew from LEIN records that Lieutenant Zawacki had seen his car there at 2:44 a.m. Detective Hutchens's opinion was helpful to the jury because, as the detective testified, it explained why he ended the interview prematurely and it explained his perspective as he continued the investigation. Because the detective's testimony was not improper, defense counsel was not ineffective for failing to object. *Ericksen*, 288 Mich App at 201.

Defendant also cannot establish that he was prejudiced by Detective Hutchens's testimony that defendant told "a couple lies" during the interview. The jury could have reached the same conclusion from other evidence in the record. And, even excluding this testimony, there was nevertheless overwhelming evidence supporting defendant's guilt, including the facts that he possessed a glove that was similar to the glove print left on the point of entry at the Isgro house break-in, he carried Joseph Isgro's tools and lockbox in his backpack, defendant's boot prints matched those found in the houses of both break-ins, a lockbox from another attempted home invasion was found inside Isgro's house, defendant had pictures of an air conditioner and furnace on his phone and both types of equipment had been disturbed in this case, and defendant told Detective Hutchens that the Isgro house was unoccupied even though he had no basis for knowing that information without having been there. Defendant cannot establish that he was denied the effective assistance of counsel when defense counsel failed to object to Detective Hutchens's testimony.

D. *GINTHER* HEARING

Defendant urges this Court to remand for a *Ginther* hearing. Again, this Court previously denied defendant's motion to remand. *People v Johnson*, unpublished order of the Court of Appeals, entered September 26, 2019 (Docket No. 346239). Remand is unnecessary when the defendant has not demonstrated that the development of additional facts would aid his argument.

*People v Chapo*, 283 Mich App 360, 369; 770 NW2d 68 (2009). Defendant's claims of innocence below contradict his retrospective, self-serving, and out-of-record claims on appeal that he would have accepted a guilty plea. Moreover, defendant's arguments—about the failure to file a motion to suppress and the failure to object to Detective Hutchens's testimony—are matters of record for which no further factual development is necessary. Therefore, remand for a *Ginther* hearing is unwarranted.

## III. DEPARTURE SENTENCE

Defendant argues that the trial court abused its discretion by departing from the sentencing guidelines range of 0 to 17 months and imposing a sentence of 3 to 10 years' imprisonment. We disagree.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). When reviewing a departure sentence for reasonableness, this Court must review "whether the trial court abused its discretion by violating the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990) [overruled by statute as recognized in *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011)] , which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (quotation marks omitted). Factual findings related to a departure sentence must be supported by a preponderance of the evidence and are reviewed for clear error. *People v Lawhorn*, 320 Mich App 194, 208-209; 907 NW2d 832 (2017).

In *Steanhouse*, our Supreme Court explained that the principle of proportionality is one in which

> "a judge helps to fulfill to overall scheme of criminal punishment by taking care to assure that the sentences imposed across the discretionary range are proportionate to the seriousness of the matters that come before the court for sentencing. In making this assessment, the judge, of course, must take into account the nature of the offense and the background of the offender." [*Steanhouse*, 500 Mich at 472, quoting *Milbourn*, 435 Mich at 651.]

In discussing the relationship between the principle of proportionality and the sentencing guidelines, the Court observed that " 'the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.' " *Steanhouse*, 500 Mich at 472, 475, quoting *Milbourn*, 435 Mich at 661. In *Milbourn*, 435 Mich at 660, the Court explained that "[e]ven where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality."

Factors that may be considered by a trial court under the proportionality standard include, but are not limited to:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the

relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Walden*, 319 Mich App 344, 352-353; 901 NW2d 142 (2017) (citations omitted).]

"The trial court appropriately exercises the discretion left to it by the Legislature *not* by applying its own philosophy of sentencing, but by determining where, on the continuum from the least to the most serious situations, an individual case falls and by sentencing the offender in accordance with this determination." *Milbourn*, 435 Mich at 653-654.

Defendant claims that his potential for rehabilitation is high because this was a nonviolent offense, the convictions were his first felonies, and he has the support of his family. The trial court found differently that defendant's potential for rehabilitation was problematic. Indeed, the court found that defendant was enabled by his family, which made it unlikely that he would age out of these criminal behaviors. Moreover, based on defendant's behavior during trial (including lying about arriving late and implicating defense counsel in the lie), the court questioned whether defendant's tendency for dishonesty could be resolved. After defendant's frequent, disrespectful interruptions and outbursts throughout trial, the court characterized defendant as defiant. These findings about defendant's character, which related to his potential for rehabilitation, are supported by the record, and therefore, are not clearly erroneous. *Lawhorn*, 320 Mich App at 208-209.

Defendant challenges the accuracy of the trial court's statement that "prison hasn't done you much good in the past." According to defendant's presentence investigation report (PSIR), he had not served a prison sentence before. But defendant had previously received a probationary sentence with a 40-day jail term for two retail fraud convictions, and nevertheless subsequently committed a controlled-substance offense for which he was again given probation, which he violated four times. Although defendant's prior record variable scores account for his previous misdemeanors, they did not reflect his lack of compliance with sentencing terms. Regardless of the trial court's mistaken statement that he served time in prison, the trial court did not clearly err by concluding that defendant's past sentences had not been productive and demonstrated his low potential for rehabilitation. *Lawhorn*, 320 Mich App at 208-209.

Defendant also claims that he was remorseful. Although he had made an apology before sentencing, when the court later began to impose his sentence, he again denied his actions. A defendant's lack of remorse is an appropriate factor to consider in determining a proportionate sentence. *Walden*, 319 Mich App at 352-353. The trial court did not clearly err by concluding that defendant had not shown remorse. *Lawhorn*, 320 Mich App at 208-209.

Defendant also claims that his dishonesty to the court and his entanglements with deputies during trial was irrelevant to the sentencing process. We again disagree. Courts are expressly permitted to consider misconduct while in custody. *Id.*

Defendant attempts to discount the court's consideration of the seriousness of the offense. The scoring of defendant's offense variables—specifically OV 16—arguably accounted for the value of the property obtained, damaged, lost, or destroyed. But the facts also established unquantified effects of defendant's crimes, including fear by one homeowner that defendant's burglary would impede the sale of his home. In addition, the court characterized defendant's

crimes as more serious because he had not simply chosen homes at random, but had targeted homes in the neighborhood that were for sale and more vulnerable because they were unoccupied. The trial court's finding that defendant's offenses were more serious than a typical breaking and entering offense is not clearly erroneous.

Defendant pleaded with the court for leniency at sentencing because he has two children. But according to the PSIR, he does not have custody of the children and he did not even have contact information for the children's mother. Defendant claims that the trial court's statement that his children would be "better off without" him suggested that the trial court departed from the guidelines because it did not like him. But regardless of whether the trial court found defendant likable, the evidence of defendant's at-risk potential for rehabilitation, defendant's lack of true remorse, defendant's behavior while in custody, and the seriousness of the offenses demonstrate that the court's departure from the guidelines range was not outside the principled range of outcomes.

## IV. SPECIAL ALTERNATIVE INCARCERATION

Defendant argues that the trial court erred by denying his motion to correct an invalid sentence. Defendant argued that his sentence was invalid because the court refused to permit defendant's consideration for special alternative incarceration (SAI) as an alternative to defendant's prison sentence. We disagree.

The application of facts to the law is a question of statutory interpretation, which this Court reviews de novo. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

MCR 6.429(A) states, in relevant part: "The court may correct an invalid sentence, on its own initiative after giving the parties an opportunity to be heard, or on motion by either party. But the court may not modify a valid sentence after it has been imposed except as provided by law." "[T]he trial court lacks authority to set aside a valid sentence once the defendant begins serving it." *People v Wybrecht*, 222 Mich App 160, 166; 564 NW2d 903 (1997). "[A]bsent a tangible legal or procedural error that makes a sentence invalid, the trial court cannot alter a sentence that a defendant has begun to serve." *Id*. at 167.

At a hearing on defendant's motion to correct his invalid sentence, the trial court indicated that it had intentionally prohibited SAI participation when it entered defendant's judgment of sentence. MCL 791.234a(4) specifically authorizes the court to either prohibit or permit a prisoner's participation in SAI.[5] Therefore, the inclusion of the provision prohibiting defendant's

---

[5] MCL 791.234a(4) states, in pertinent part:

> If the sentencing judge prohibited a prisoner's participation in the special alternative incarceration program in the judgment of sentence, that prisoner shall not be placed in a special alternative incarceration unit. If the sentencing judge permitted the prisoner's participation in the special alternative incarceration program in the judgment of sentence, that prisoner may be placed in a special

SAI participation did not render his sentences invalid. Accordingly, the trial court did not err by denying the portion of the motion related to SAI. *Wybrecht*, 222 Mich App at 166.

Defendant argues that the SAI program was designed to address the very character problems that the PSIR and trial court found that he possesses, such as a lack of self-discipline and defiance. Defendant notes that the "military discipline portion of the program is designed to break down streetwise attitudes, so staff can teach positive values and attitudes." The trial court explained that it did not consider the SAI program as a viable option for defendant because the program had deteriorated and was not achieving these goals. Defendant argues that a court cannot prohibit this alternative to a prison sentence merely because it does not like the program. But MCL 791.234a(4) specifically authorizes the court to either prohibit or permit a prisoner's participation in SAI, and the plain language of the statute does not limit the grounds for which a court may prohibit participation. *People v Lewis*, 503 Mich 162, 165; 926 NW2d 796 (2018) ("[A] court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself.") (quotation marks and citations omitted). The trial court did not err by determining that the SAI program would not be an effective program for defendant.

Affirmed.


/s/ Patrick M. Meter
/s/ Jane M. Beckering
/s/ Colleen A. O'Brien

---

alternative incarceration unit if the department determines that the prisoner also meets the requirements of subsections (2) and (3).