RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0320p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

　　　　　　　　　*Plaintiff-Appellee,*

　　*v.*

JAY SCHMELTZ,

　　　　　　　　　*Defendant-Appellant.*

No. 11-3140

─────────────────

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 09-00182-002—David A. Katz, District Judge.

Argued:  October 14, 2011

Decided and Filed:  December 20, 2011

Before:  ROGERS, COOK, and WHITE, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Neil S. McElroy, Toledo, Ohio, for Appellant.  Angela M. Miller, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:** Neil S. McElroy, Toledo, Ohio, for Appellant.  Angela M. Miller, Jessica Dunsay Silver, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Roger S. Bamberger, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

─────────────────

## OPINION

─────────────────

COOK, Circuit Judge.  Federal prisoner Jay Schmeltz appeals his conviction for falsifying a document in violation of 18 U.S.C. § 1519, alleging that the structure of his indictment was duplicitous and that the district court's failure to provide the jury with

1

a specific unanimity instruction violated his right to a unanimous verdict. Finding no error, we affirm.

I.

On May 30, 2004, doctors at St. Vincent's Hospital discharged Carlton Benton, releasing him into the custody of two deputies of the Lucas County Sheriff's Office, Patrick Mangold and defendant Jay Schmeltz. Benton, a pretrial detainee, had received treatment at the hospital for seizures.

After the hospital discharged Benton, the two deputies attempted to extricate him from the web of handcuffs, medical equipment, and leg irons binding him to his hospital bed. Benton resisted, and a thirty-minute struggle ensued. With the help of a third deputy, mace, and blows to Benton's torso and upper body, Schmeltz and Mangold subdued him and shifted him into a wheelchair for easier transport. With Benton restrained and in the wheelchair, the deputies were able to load him into a waiting van and take him on the ten-minute drive to jail without further incident.

Sergeant John Gray and several other deputies met Mangold and Schmeltz at the jail to assist with Benton. Together, the officers escorted Benton, now out of the wheelchair and on foot, to the booking area, his hands cuffed to a belly chain and leg irons restricting his gait to a shuffle of "short, unbalanced steps."

After pausing in the booking area to consider where to take Benton, Defendant Schmeltz shoved Benton in the direction of the elevator. Benton, unable to break his fall because of his restraints, hit his head on the wall and fell to the floor. A video camera set up in the booking area captured the incident.

Schmeltz picked Benton up from the ground and, along with five other deputies, took him to a medical unit on the second floor of the jail. Once in the cell, the officers placed Benton on a bed, face down, and attempted to remove his restraints. Benton resisted again, frustrating the officers' attempts. Finally, Sergeant Gray, one of the deputies assisting Schmeltz, subdued Benton with a "carotid artery restraint hold," more

commonly known as a "sleeper hold," that rendered Benton unconscious. As Benton lay motionless on the bed, the officers removed his restraints and left the cell.

Later that day, a nurse discovered Benton still unconscious while performing her rounds. The nurse examined Benton, found that he was not breathing, and performed CPR. Benton never regained consciousness and died two days later.

Following the incident, Schmeltz prepared two "Corrections Officer Reports" describing the events surrounding Benton's transport from the hospital—one dated May 30, 2004, the other dated June 1, 2004. The earlier report followed the discovery of Benton unconscious in his cell; the later report resulted from Schmeltz's supervisor's request that he clarify one aspect of the earlier report. Neither report included any account of Schmeltz's shoving Benton or Gray's rendering Benton unconscious with a sleeper hold.

An investigation followed Benton's death. Ultimately, a grand jury charged Schmeltz and three other officers with various crimes in connection with their use of force on Benton and their alleged attempt to conceal their actions during the investigation. This appeal targets only Counts 6 and 7 of Schmeltz's indictment.

Count 6 read:

> On or about May 30, 2004, in the Northern District of Ohio, Western Division, JAY M. SCHMELTZ, defendant herein, acting in relation to and in contemplation of a matter within the jurisdiction of an agency of the United States, knowingly falsified a document—specifically an official Correction Officer Report reflecting his actions, and the actions of his fellow corrections officers, in relation to uses of physical force on C.B. on May 30, 2004—with the intent to impede, obstruct, and influence the investigation and proper administration of that matter.

> Specifically, SCHMELTZ *omitted from his official report any mention of his assault of C.B. in the Jail's Booking area; any mention of John E. Gray's use of a "sleeper hold" on C.B.; and any mention of the fact that Gray had rendered C.B. unconscious with the sleeper hold.*

Count 7 charged as a separate crime Schmeltz's submission of the second report, citing the same three omissions.  Both counts charged Schmeltz with falsifying an official report in violation of 18 U.S.C. § 1519, which penalizes

> [w]hoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . or in relation to or contemplation of any such matter or case . . . .

The jury found Schmeltz guilty of falsifying the May 30th report and not guilty of the crime with respect to the later report.  The district court sentenced him to twelve months and one day's imprisonment.  Schmeltz appeals.

II.

This appeal marks the first time that Schmeltz challenges Count 6 as unconstitutional or duplicitous.  We thus review only for plain error.  *See United States v. Boyd*, 640 F.3d 657, 666 (6th Cir. 2011).

At bottom, Schmeltz argues that Count 6 "set[] forth separate and distinct crimes in one count" by basing the charge of falsifying a report on three separate omissions. *See United States v. Kakos*, 483 F.3d 441, 443 (6th Cir. 2007) (quoting *United States v. Davis*, 306 F.3d 398, 415 (6th Cir. 2002)).  Because Count 6 was duplicitous, Schmeltz argues, the district court erred in not instructing the jury that it must unanimously agree as to which of the three omissions supported a guilty finding, rather than agree that Schmeltz generally falsified the report.  Because Count 6 charged only one crime, we find no error.

Schmeltz takes issue with the district court's instruction that

> In order to return a guilty verdict, all 12 of you must agree as to each count and each defendant that at least one way of violating the statute has been proved; however, all of you need not agree that the same way has been proved.

This instruction mirrors the Sixth Circuit Pattern Jury Instruction appropriate where "the indictment alleges that the defendant committed a single element of an offense in more than one way." Sixth Circuit Pattern Jury Instructions § 8.03B(2) note (2011).

The district court's instruction was not erroneous. We approved of a conceptually similar instruction in *United States v. Cromer*, noting that "[a]lthough a jury must unanimously find that the government has proven each element of a crime, it 'need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element.'" No. 09-5853, 2011 WL 3715110, at *2 (6th Cir. Aug. 25, 2011) (quoting *Richardson v. United States*, 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999)). A charge for falsifying a document under § 1519 requires the government to prove (1) that Schmeltz "knowingly . . . fals[ified] or[] ma[de] a false entry in" his Correction Officer Report; (2) that the Correction Officer Report related to a "matter within the jurisdiction of any department or agency of the United States"; and (3) that Schmeltz falsified or made a false entry in the Correction Officer Report "with the intent to impede, obstruct, or influence the investigation" of a matter within the agency's jurisdiction. *See* 18 U.S.C. § 1519; *United States v. Hunt*, 526 F.3d 739, 743 (11th Cir. 2008). Jurors could therefore disagree about what Schmeltz omitted from the reports while unanimously agreeing on the ultimate issue: that Schmeltz knowingly falsified his Corrections Officer Report with the intent to impede a federal investigation.

Seizing upon the phrase "false entry in any record" in § 1519, Schmeltz argues that Count 6 was duplicitous because the omissions from his report constitute separate false entries and therefore present three separate violations of § 1519. *See, e.g.*, *United States v. Dedman*, 527 F.3d 577, 600 n.10 (6th Cir. 2008) (reasoning that a count alleging multiple false statements in violation of 18 U.S.C. § 1001 may have been duplicitous because the false statements constituted "entirely separate offenses"); *United States v. Duncan*, 850 F.2d 1104, 1111 (6th Cir. 1988) (concluding that an indictment alleging separate false statements for one count of violating 26 U.S.C. § 7206 was duplicitous after finding that the "essence of the statute lies in the willful falsity of the statement"), *overruled on other grounds by Schad v. Arizona*, 501 U.S. 624, 111 S.Ct.

2491, 115 L.Ed.2d 555 (1991).  However, Schmeltz was not charged with making "a false entry," but rather the indictment alleged he "falsified a document."  Indeed as the Government made clear at oral argument, the "false entry" charge is usually reserved for entries made on pre-existing forms rather than narrative reports.  Accordingly, the present appeal turns on whether § 1519 criminalizes the creation of a false *document*, the government's view; or individual false *statements*, Schmeltz's view.

Under the circumstances that this case presents, the falsification statute plainly criminalizes the creation of a false document.  Apart from the statute's prohibition of "mak[ing] a false entry," § 1519 proscribes several other means of tampering with a document germane to a federal investigation:  the statute punishes whoever "alters, destroys, mutilates, conceals, covers up, [or] falsifies" a document.  18 U.S.C. § 1519.  Each of the listed verbs acts upon the entire "record, document, or tangible object."  *Accord* S. Rep. No. 107-146, at 13 (2002) ("The intent of [§ 1519] is simple; people should not be destroying, altering, or falsifying documents to obstruct any government function.").  Further, Schmeltz's indictment alleged that he had "*falsified a document*—specifically an official Correction Officer Report reflecting his actions."

The "falsifies" clause of § 1519 was thus intended to punish the falsification of a document, rather than specific statements or omissions within a document.  Accordingly, Schmeltz could violate § 1519 once—and no more than once—by falsifying his May 30th report with his omissions.  Because Count 6 charged only one offense, the district court did not err in instructing the jury.

III.

We accordingly AFFIRM Schmeltz's conviction.