*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DEVON COURTEZ ROBINSON,

      Defendant-Appellant.

UNPUBLISHED
July 1, 2021

No. 352024
Kalamazoo Circuit Court
LC No. 2019-000008-FH

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JASMINE TANESHA-LASHA ROBINSON,

      Defendant-Appellant.

No. 352025
Kalamazoo Circuit Court
LC No. 2019-000019-FH

Before: STEPHENS, P.J., and BECKERING and O'BRIEN, JJ.

PER CURIAM.

A jury[1] convicted defendants, Devon Courtez Robinson and Jasmine Tanesha-Lasha Robinson, of committing a fraudulent insurance act in violation of MCL 500.4511(1). Defendants appeal as of right. For the reasons detailed in this opinion, we conclude that defense counsel provided ineffective assistance by failing to request a specific unanimity instruction and that, but for this error, there was a reasonable probability of a different outcome. Accordingly, we vacate both defendants' convictions and remand for a new trial.

---

[1] Defendants were tried jointly, before a single jury.

-1-

## I. BACKGROUND

Defendants' convictions relate to an insurance claim that they made following a fire at their home on September 13, 2018. On that date, first responders received a call about the fire at approximately 5:15 p.m. Defendants were at a family cookout when they received a call about the fire soon after. The fire marshal investigating the fire determined that it started in a box of clothing and other items in the basement of defendants' home. After eliminating other possible causes, the fire marshal concluded that the fire was "an incendiary fire" started with "human involvement."

At trial, the prosecutor did not seek to necessarily establish that defendants personally started the fire. Instead, she maintained that defendants "had a hand in" the fire, possibly with other persons. In this regard, the prosecutor introduced the search history from defendant Devon Robinson's cell phone to show that he had searched for common causes of house fires[2] and new apartment complexes shortly before the fire. There was also evidence that defendants had renewed their delinquent renter's insurance policy shortly before the fire. On the day of the fire, defendant Jasmine Robinson—who threw some laundry in the basement before leaving the house shortly before 4:00 p.m.—was the last known individual in the house. There were also text messages introduced between Jasmine and Devon's brother, Jammie Robinson; the most notable, because of its timing, being a message minutes after the fire about "talk[ing] in person." When questioned about the fire, defendants denied any involvement. Devon told investigators that he believed the fire was intentionally set because there were people in the neighborhood who did not like him and his family.

After the fire, defendants submitted an insurance claim to Auto-Owners Insurance Company, which Auto-Owners eventually denied. In connection with their claim, on October 17, 2018, defendants submitted a notarized sworn statement and proof of loss to Auto-Owners, claiming losses totaling $11,341.35. Included in this total, defendants sought compensation for property loss caused by the fire, including a washer and dryer, tables, chairs, a couch, lamps, a microwave, a knife set, bikes, scooters, a television, a fireplace, and a freezer. In submitting their claim, defendants also signed a form containing the following statement:

> I have not intentionally caused this loss. I have not in any way done anything to violate the conditions of the policy. The loss or damage did not occur as a result of my willful act or failure to act. I have not in any manner concealed any fact about the loss or [tried] to deceive the company as to the extent of the loss. I will provide any other information that may be necessary to support my claim and have reviewed statutory fraud provisions on the back of this form.

Auto-Owners retained private investigators to investigate the claim, particularly in light of an anonymous tip that police received about the fire. One of those investigators, Kenneth Colby, testified at trial. Colby interviewed defendants; he visited their new apartment; and he visited the home of Devon's mother, Claudia Laviolette. According to Colby's testimony, property claimed

---

[2] There was no indication, however, that any of these were the cause of the fire in defendants' home or that the fire at defendants' home was made to look like any of these causes.

as a loss by defendants was in use either (1) at Laviolette's home, including a fireplace, a couch, tables, chairs, a freezer, and a washer and dryer, or (2) defendants' new apartment, including lamps, a knife set, and a microwave. He also testified that he saw bikes and an ATV, seemingly in good repair, at the house where the fire occurred. With regard to the property at her house, Laviolette testified as a witness for the defense. She testified that she took items that defendants had put out to the trash after the fire. She tried to clean and rehab the items, but some of the items she never used and others she later disposed of because they continued to smell of smoke.

As a result of their insurance claim, defendants were charged under MCL 500.4511(1), which makes it a felony to commit "a fraudulent insurance act" as defined by MCL 500.4503. Relevant to this case, under MCL 500.4503(c),

> A fraudulent insurance act includes, but is not limited to, acts or omissions committed by any person who knowingly, and with an intent to injure, defraud, or deceive:
>
> * * *
>
> (c) Presents or causes to be presented to or by any insurer, any oral or written statement including computer-generated information as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy, *knowing that the statement contains false information concerning any fact or thing material to the claim.* [Emphasis added.]

As defined by statute, a "statement" "includes, but is not limited to, any notice statement, proof of loss, bill of lading, receipt for payment, invoice, account, estimate of property damages, bill for services, claim form, diagnosis, prescription, hospital or doctor record, X-rays, test result, or other evidence of loss, injury, or expense." MCL 500.4501(i).

The prosecutor maintained at trial that there were two factual pathways upon which the jury could conclude that defendants committed a fraudulent insurance act under the statute. First, she asserted that defendants' claim was fraudulent because they had "a hand in" the fire. Second, she maintained that defendants misrepresented the extent of their losses by seeking compensation for property that was not ruined by the fire. Notably, in presenting these two possibilities to the jury, the prosecutor made the following statements during closing arguments:

> [T]here's two ways or theories you can find under. Some of you could find and say wow, I really think they had a hand in that fire, they contributed to their loss and therefore everything else from there on out is considered a false claim because if you contribute to your loss, I'm going to argue that you can't then later claim that it's a valid claim.
>
> Some of you can say, you know what, I think it's just super clear to me because that proof of loss statement and it's very clear they were using some of those items and that there was some fraud and deceit there. Some of you can decide that way.

You all don't have to agree on the actual theory of how you find but what you do have to agree beyond a reasonable doubt, unanimous, all 12 of you, is that Devon and/or Jasmine Robinson made a statement, submitted a statement that was set to defraud, deceive or injure the insurance company. How you get there, that's up to you. Half of you could say, oh, yeah, the statement's super clear to me; oh, yeah the fire is super clear to me or maybe all of you will say one way, it doesn't matter. What you have to be anonymous [sic] on is an actual verdict of whether or not they're guilty.

The jury convicted defendants as charged. Defendants appeal as of right.

## II. ANALYSIS

On appeal, in light of the prosecutor's presentation of two distinct acts to support the knowing falsity of defendants' statements in support of their insurance claim, Devon asserts that the trial court plainly erred by failing to give a specific unanimity instruction to the jury. Alternatively, he argues that his defense counsel was ineffective by failing to object to the instructions given and to request a specific unanimity instruction. Insofar as he contends that the jury instructions were inadequate because the trial court failed to provide a specific unanimity instruction, Devon waived this jury-instruction argument during trial when his attorney expressed approval of the instructions given.[3] See *People v Smith*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 346044); slip op at 17. Our review of this issue is, therefore, limited to Devon's ineffective-assistance claim. See *People v Thorne*, 322 Mich App 340, 346; 912 NW2d 560 (2017).

"Appellate review of an unpreserved argument of ineffective assistance of counsel, like this one, is limited to mistakes apparent on the record." *People v Johnson*, 315 Mich App 163, 174; 889 NW2d 513 (2016). "To establish ineffective assistance of counsel, defendant must show (1) that defense counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's errors, a different outcome would have resulted." *People v Jackson*, 292 Mich App 583, 600-601; 808 NW2d 541 (2011). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise. Defendant also bears the burden of establishing the factual predicate for his claim." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015) (quotation marks and citations omitted).

"A defendant has the right to a unanimous verdict and it is the duty of the trial court to properly instruct the jury on this unanimity requirement." *People v Martin*, 271 Mich App 280, 338; 721 NW2d 815 (2006), aff'd 482 Mich 851 (2008). It is undisputed that the trial court gave the jury a general unanimity instruction at defendants' trial, and "[u]nder most circumstances, a

---

[3] There were several discussions of jury instructions during trial, during which counsel agreed to the instructions, which included a general unanimity instruction, and counsel repeatedly responded "no," when asked by the trial court if there was anything that needed to be addressed regarding the jury instructions.

general instruction on the unanimity requirement will be adequate." *Id*. To determine when a general instruction will suffice and when a more specific instruction is required, the Michigan Supreme Court has explained that,

> if alternative acts allegedly committed by defendant are presented by the state as evidence of the actus reus element of the charged offense, a general instruction to the jury that its decision must be unanimous will be adequate unless 1) the alternative acts are materially distinct (where the acts themselves are conceptually distinct or where either party has offered materially distinct proofs regarding one of the alternatives), or 2) there is reason to believe the jurors might be confused or disagree about the factual basis of defendant's guilt. [*People v Cooks*, 446 Mich 503, 524; 521 NW2d 275 (1994).]

"The critical inquiry is whether either party has presented evidence that materially distinguishes any of the alleged multiple acts from the others. In other words, where materially identical evidence is presented with respect to each act, and there is no juror confusion, a general unanimity instruction will suffice." *Id*. at 512-513.

In *Cooks*, for example, the child-victim testified about three acts of sexual penetration on three separate days, but the defendant was convicted of only one count of criminal sexual conduct. On appeal, the defendant argued that the jury should have been given a specific unanimity instruction requiring the jury to agree about a specific act of penetration. In rejecting this argument, the Court reasoned:

> [T]he evidence offered in this case to support each of the alleged acts of penetration was materially identical, i.e., the complainant's equivocal testimony of an anal penetration, occurring in the same house over an unspecified three-day period in January 1989, while only she and defendant were in the room. Thus, the multiple acts alleged by the prosecutor were tantamount to a continuous course of conduct.
>
> Furthermore, . . . defendant here did not present a separate defense or offer materially distinct evidence of impeachment regarding any particular act. He merely denied the existence of any inappropriate behavior. Thus, the sole task of the jury was to determine the credibility of the victim with respect to the pattern of alleged conduct. Because neither party presented materially distinct proofs regarding any of the alleged acts, the factual basis for the specific unanimity instruction . . . was nonexistent.
>
> *   *   *
>
> Absent any indication of juror confusion or disagreement over the existence of any of the alternative acts, a specific unanimity instruction is not required on these facts. [*Id*. at 528-529.]

As a comparison, in *United States v Duncan*, 850 F2d 1104, 1105 (CA 6, 1988), abrogated by *Schad v Arizona*, 501 US 624; 111 S Ct 2491; 115 L Ed 2d 555 (1991) (plurality opinion),[4] the defendants were charged with making or preparing a tax return containing a false statement as to a material matter. Notably, the tax return in question contained two separate and distinct statements that were purported to be false: "(1) that Duncan was entitled to report the $115,000 item as a short term capital gain rather than as ordinary income, and (2) that Duncan was entitled to deduct the $8,800 item as interest when he had neither paid the interest nor taken the $8,800 paid by Desh [Investment Corporation] into his own income." *Id*. at 1108. A specific unanimity instruction, providing that the jury must agree on the statement that was false, was requested but denied, and the court in *Duncan* concluded that such an instruction was warranted, explaining:

> [T]he jury in this case needed to agree on the willful falsity of one factually distinct false statement because the statements are "conceptually distinct." Although both the interest deduction and the income characterization arose from the same transaction, the circumstances of their formulation and the proof bearing upon their willful falsity were distinct. Downing's willfulness toward the $8,800 interest deduction turned principally on his having signed Desh's check that paid the interest, and on his assignment of the details of preparing the return to his employee. His willfulness on the capital gain turned mainly on his status and skill as a CPA and on his participation in the planning with Crabtree and Butcher. Proof of Duncan's willfulness toward the $8,800 interest payment required an assessment of an unresolved ambiguity in the case of whether he signed the return itself or a later declaration, and thus never saw the return. Deciding his willfulness on the capital gain entailed consideration of his knowledge of tax law, his relationship to Downing, and his actual knowledge of the details of the alleged "sham" transaction. When distinct proof is required to establish distinct affirmative acts as elements of an offense, specific unanimity is necessary. [*Id*. at 1113.]

In *Cooks*, 446 Mich at 516, in adopting the standards for when a specific unanimity instruction is required, the Michigan Supreme Court specifically identified *Duncan* as one of several "instructive" cases, and we likewise find it instructive in addressing the current case.[5]

___

[4] For a discussion of *Schad*'s abrogation of *Duncan* see *United States v Schmeltz*, 667 F3d 685, 688 (CA 6, 2011).

[5] In reliance on *Duncan* and several other cases, in *Cooks*, 446 Mich at 515, the Michigan Supreme Court adopted the "conceptually distinct" test as a measure of when a specific unanimity instruction is required when the prosecutor offers evidence of distinct acts to establish the *actus reus* of an offense. *Duncan* has arguably been undermined by *Schad*, 501 US at 636, and the United States Supreme Court's subsequent decision in *Richardson v United States*, 526 US 813, 817; 119 S Ct 1707; 143 L Ed 2d 985 (1999). Specifically aware of *Schad* and nevertheless employing the "conceptually distinct" test, we note that *Cooks* cited *Duncan* with approval, and that *Cooks* adopted the "conceptually distinct" approach employed in *Duncan* despite *Schad*'s apparent rejection of that test. See *Cooks*, 446 Mich at 515-516. Further, although the viability of

-6-

In this case, the facts appear far more analogous to *Duncan* than to *Cooks*, and we conclude that the prosecutor's presentation of two separate acts to establish the knowing falsity of defendants insurance statements warranted a specific unanimity instruction. Conceptually, defendants' purportedly false statements were distinct, as one required proof of defendants' involvement with the actual fire and their concealment of the facts of the fire, while the other required resolution of the disputed questions surrounding the extent of defendants' losses and whether they misrepresented the extent of their losses. Cf. *Duncan*, 850 F2d at 1113. Although the different acts are not mutually exclusive, they are also clearly not a "a series of similar acts," *Cooks*, 446 Mich at 519, but vastly different acts: involvement in actually setting fire to a house compared with misrepresenting the extent to which property was damaged. Further, the proofs offered by the parties in connection with these distinct alternatives were materially different. See *id*. at 512-513; *Duncan*, 850 F2d at 1113.

Under the first theory, the prosecutor sought to show that defendants caused—or contributed—to the actual fire that caused their losses and then concealed their participation from Auto-Owners. The evidence in support of these acts constituted of (1) the fire marshal's testimony regarding the cause of the fire, i.e., that it resulted from human involvement, (2) text messages between Jasmine and Jammie to "talk in person" shortly after the fire (though no evidence was offered to establish that Jammie was involved in the fire), and (3) evidence suggesting that defendants had foreknowledge of the fire, such as their renewal of their delinquent insurance policy shortly before the fire and Devon's Internet searches for common causes of fire and new apartments. The defense to these proofs amounted to an assertion that the prosecutor failed to present proof of defendants' involvement in the fire beyond a reasonable doubt. For example, defendants contested the significance of Jasmine's texts and Devon's Internet searches; they cross-examined the fire marshal on the cause of the fire; and they argued that it did not make sense for defendants to destroy their own property in order that—as contended by the prosecutor—Devon could throw a lavish birthday party for himself.

In comparison, the prosecutor's second theory—that defendants misrepresented the extent of their losses—involved materially different proofs and defenses thereto. To establish that defendants mispresented the extent of their losses, the prosecutor relied heavily on testimony from Colby, who investigated defendants' claim, interviewed defendants, photographed their property, and visited Laviolette's house and defendants' new apartment. Defendants, in contrast, maintained that their property, though initially taken by Laviolette, was unusable and that defendants had no intent to deceive Auto-Owners as evinced by the fact that they cooperated with Auto-Owners and updated the information they provided to Auto-Owners by, for example, informing Auto-Owners that some of the property initially claimed as lost was salvageable (such as their television and other items). Defendants also disputed whether the property that Colby saw was the same property at issue in their insurance claim. In support of their defense, defendants presented testimony from Laviolette to the effect that, although she did initially take property from defendants, she did not

---

this test under federal law is doubtful following *Schad* and *Richardson*, *Cooks*—which was specifically decided on the basis of the unanimity requirement under state law, see *Cooks*, 446 Mich at 510—remains good law in Michigan, which we are bound to follow unless it is clearly overruled. See *People v Anthony*, 327 Mich App 24, 44; 932 NW2d 202 (2019).

keep it because of the smoke smell and that some of the property in question—such as the washer and dryer—was never in use at her house.

Given the different evidence and witnesses offered to support and refute the prosecutor's theories, different jurors could well have reached their verdict on the basis of different and distinct acts by defendants. That is, "the jury might have distinguished between the credibility of different witnesses or the weight to be given various items of real evidence." See *Cooks*, 446 Mich at 523 (quotation marks and citation omitted). Jurors, therefore, could have disagreed about the factual basis for defendants' guilt, and in these circumstances, they should have been given a specific unanimity instruction to the effect that they had to unanimously agree on the knowing falsity of at least one factually distinct false statement by each defendant. See *id*. at 512-513, 524; *Duncan*, 850 F2d at 1113. See also *United States v Holley*, 942 F2d 916, 929 (CA 5, 1991) (concluding that perjury case required instruction that jury must unanimously agree about the falsity of at least one of the defendant's statements for each count).

Although, on the merits, defendants would have been entitled to such an instruction under *Cooks*, the instruction was not requested, and the real question before us is whether defense counsel's failure to request the instruction amounted to the ineffective assistance of counsel. On the facts of this case, we conclude that this failure fell below an objective standard of reasonableness and that, but for counsel's errors, there was a reasonable probability of a different outcome. See *Jackson*, 292 Mich App at 600-601.

Under the first prong, although effective assistance is presumed and a defendant must overcome a presumption that counsel's decisions were a matter of trial strategy, the strategy "must be sound, and counsel's decisions as to it objectively reasonable; a court cannot insulate the review of counsel's performance by calling it trial strategy." *People v Douglas*, 496 Mich 557, 585; 852 NW2d 587 (2014) (quotation marks and citation omitted). We can conceive of no sound trial strategy for failing to request a specific unanimity instruction. The instruction would not have been inconsistent with the defense's arguments or proofs; indeed, there would have been absolutely no downside to such an instruction. At the same time, such an instruction would have protected defendants' rights to a unanimous verdict and corrected the misinformation provided by the prosecutor to the effect that the jury did *not* have to agree on the factual basis for defendants' guilt. On this record, given the prosecutor's presentation of alternate acts to establish the knowing falsity of defendants' insurance claim, the distinct proofs and defenses related to these separate acts, and the prosecutor's statements during closing, the failure to request a specific unanimity instruction cannot be excused as a matter of trial strategy. See *id*.

With regard to the second prong, on the facts of this case, there is also a reasonable probability that failure to request a specific unanimity instruction affected the outcome of the trial. Notably, this case does not involve the mere absence of a specific unanimity instruction; instead, the prosecutor affirmatively told the jurors that they did *not* have to unanimously agree on the factual basis of defendants' guilt. Because defense counsel failed to object and request a specific unanimity instruction, this incorrect statement of the law by the prosecutor went uncorrected. See *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002) ("A prosecutor's clear misstatement of the law that remains uncorrected may deprive a defendant of a fair trial."). And such a clear misstatement of law created a significant risk of nonunanimity, providing a tangible indication of jury confusion, that was not alleviated by the general unanimity instruction. See

*Cooks*, 446 Mich at 516 n 17. Cf. *Ngo v State*, 175 SW3d 738, 751 & n 51 (Tex Crim App, 2005). Further, the evidence underlying the distinct acts necessary to establish the falsity of defendants' statements—although perhaps sufficient—was not overwhelming under either theory, and it appears reasonably probable that jurors, improperly informed by the prosecutor that they did not have to agree on the factual basis for defendants' guilt, could have assessed the weight and credibility of the evidence differently and reached their verdicts on different factual bases.[6] See *United States v Gilley*, 836 F2d 1206, 1212 (CA 9, 1988); see also *Horton v United States*, 541 A2d 604, 611 (DC, 1988) ("[T]here is no evidence to which we can point that indicates unanimous agreement among the jurors; we cannot deduce from the record whether the jury must have agreed upon one particular set of facts."). On the whole, considering the available record, counsel's failure to request a specific unanimity instruction fell below an objective standard of reasonableness, and there is a reasonable probability that, but for counsel's errors, a different outcome would have resulted. *Jackson*, 292 Mich App at 600-601. Devon has established his ineffective claim, and he is entitled to a new trial on this basis.

With regard to Jasmine, the need for a unanimity instruction plainly applies with equal force to her case, and her attorney likewise provided ineffective assistance warranting a new trial by failing to request a specific unanimity instruction. See *id*. However, we note that Jasmine failed to raise the unanimity issue on appeal. Nevertheless, exercising our discretion under MCR 7.216(A)(7), we deem it just to also grant Jasmine a new trial on the basis of counsel's ineffective assistance regarding the need for a specific unanimity instruction.[7]

Vacated and remanded for a new trial. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Jane M. Beckering
/s/ Colleen A. O'Brien

---

[6] Indeed, during sentencing, the trial court commented that the facts in this case gave rise to "so many different ways" the jury could have reached its verdict.

[7] Given our decision to remand for a new trial, we find it largely unnecessary to address the remainder of defendants' arguments on appeal. However, related to an issue raised by Jasmine, in case the issue should again arise during retrial, we remind the prosecutor that, unless the specific circumstances warrant it, it is generally improper to use evidence of chronic financial difficulties—such as receipt of social security and low-paying employment—to establish a motive to commit a crime. See *People v Henderson*, 408 Mich 56, 66; 289 NW2d 376 (1980).