*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

YUSEF LATEEF PHILLIPS,

        Defendant-Appellant.

UNPUBLISHED
May 19, 2022

No. 356255
Berrien Circuit Court
LC No. 2020-002907-FH

Before: CAMERON, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

In this interlocutory appeal, defendant, Yusef Lateef Phillips, appeals as on leave granted the trial court's order denying his motion to suppress evidence. We affirm.

## I. FACTS

This case arises from defendant's arrest on August 28, 2020, in Benton Harbor. On that day, Michigan State Trooper Ian Fields was assigned to the Secured Cities Partnership Detail to provide additional patrol for the city. After completing a traffic stop that night on Clay Street, Trooper Fields was walking back to his patrol vehicle when a white Mitsubishi passed him going west. Trooper Fields got into his patrol vehicle and also drove west on Clay Street and saw the white Mitsubishi turn left onto Superior Street. Although the patrol vehicle's dashcam video indicates that the driver of the Mitsubishi used his turn signal before turning, Trooper Fields testified that he did not see the turn signal and therefore followed the vehicle.

As he approached the intersection of Clay and Superior Streets, Trooper Fields looked through the window of the driver's side door of his patrol vehicle and saw the Mitsubishi on Superior Street abruptly turn right and drive between two parked cars, drive over the curb at a high

-1-

rate of speed, cross over a sidewalk, and come to a stop in the front yard of a house.[1] Trooper Fields testified that it was unclear whether the Mitsubishi hit one of the parked cars. Trooper Fields turned left onto Superior Street, drove in the direction of the Mitsubishi, and activated the patrol vehicle's emergency lights. He parked the patrol vehicle behind the Mitsubishi, got out of the patrol car, and approached the driver's side of the Mitsubishi while his partner approached the passenger side.

Trooper Fields later testified that he anticipated that the occupants of the car had fled on foot. However, the officers discovered that the car's driver, David Beard, and the occupant of the front passenger seat, defendant, were still in the car. Trooper Fields spoke briefly to Beard about why he had driven over the curb and sidewalk and into the front yard of a home. Beard explained that he lived in the house next door to the area where he had parked the Mitsubishi and that he usually parked there. Trooper Fields testified that he noticed a strong odor of alcohol emanating from the Mitsubishi, and he therefore asked Beard to get out of the car. According to Trooper Fields, when Beard got out of the car he appeared to be sober and did not smell of alcohol. Beard told the officer that the car was a rental car but that he had not leased the car. Trooper Fields testified that he therefore decided to impound the Mitsubishi in accordance with the policy of the Secured Cities Partnership Detail to tow rental vehicles not in the possession of authorized drivers.

Trooper Fields then walked to the front passenger side of the Mitsubishi and spoke with defendant. He testified that he again observed that the interior of the Mitsubishi smelled strongly of alcohol. Defendant appeared intoxicated and appeared to have a cup in his hand; the officer therefore asked defendant to step out of the car. According to the patrol vehicle's dashcam recording, Trooper Fields stated to defendant "this car smells like alcohol, so I'm going to search it." The dashcam video recording shows that when defendant emerged from the Mitsubishi, he had a cell phone in his hand rather than a cup. Other officers at the scene then searched the Mitsubishi and found two semiautomatic pistols in the front passenger compartment, one under the passenger seat and another wedged between the passenger seat and the center console. The officers placed defendant and Beard under arrest.

Defendant was charged with two counts of carrying a concealed weapon, MCL 750.227; two counts of felon in possession of a firearm, MCL 750.224f; and two counts of possession of a firearm during the commission of a felony, MCL 750.227b. Before the trial court, defendant moved to suppress "all evidence, including without limitation certain firearms, seized by law enforcement" following the stop of the Mitsubishi. Defendant contended that suppression of the evidence was warranted because the stop was a traffic stop unsupported by probable cause or reasonable suspicion of criminal activity, or by a moving civil violation. Defendant asserted that he had standing to challenge the validity of the traffic stop because as a passenger of the vehicle during a traffic stop he had been seized by police. Defendant contended alternatively that the evidence was subject to suppression because his detention by law enforcement was unreasonably prolonged.

---

[1] During a conversation recorded by the patrol car's dashcam, the driver of the car explained to Trooper Fields that after driving between the two parked cars, he drove the Mitsubishi down the sidewalk until coming to a stop in the grass.

At the conclusion of the hearing the trial court denied defendant's motion to suppress the evidence, finding that the search was not unreasonable. The trial court found that the officers searched the Mitsubishi as part of an investigatory stop but not a traffic stop because the car was stopped before the officers arrived. The trial court also found that although it had not been a traffic stop, the officers had a legitimate reason to conduct a traffic stop of the Mitsubishi for careless or reckless driving. The trial court further found that there was no indication that defendant had a reasonable expectation of privacy in the car because it was not leased to him, but that even if a reasonable expectation of privacy existed, considering the totality of the circumstances, the officers' search of the vehicle did not violate the Fourth Amendment prohibitions against unreasonable searches and seizures. The trial court also found that defendant had not been detained for an unreasonably long time. The trial court further found that the evidence was not subject to suppression because it was discovered during a proper inventory of the vehicle in preparation for towing conducted in accordance with the police department's policy.

This Court denied defendant's application for leave to appeal the trial court's order denying suppression of the evidence. *People v Phillips*, unpublished order of the Court of Appeals, entered March 31, 2021 (Docket No. 356255). Defendant sought leave to appeal to our Supreme Court, which in lieu of granting leave to appeal remanded the case to this Court for consideration as on leave granted. *People v Phillips*, ___ Mich ___; 967 NW2d 232 (2021).

## II. DISCUSSION

Defendant contends that the trial court erred by denying his motion to suppress the evidence of the guns discovered by police during the search of the Mitsubishi. Defendant argues that the officers did not have probable cause or reasonable suspicion to support the traffic stop, and the subsequent search therefore was unconstitutional. Defendant also contends that he was unconstitutionally detained by police for an unreasonably prolonged time. Defendant argues that as a result of the unconstitutional search, the evidence is subject to suppression. We disagree.

## A. STANDARD OF REVIEW

Typically, we review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Thorpe*, 504 Mich 230, 251-252; 934 NW2d 693 (2019). A trial court abuses its discretion if its decision falls outside the range of principled outcomes, *id.*, or if it admits evidence that is inadmissible as a matter of law. *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). Ordinarily, a trial court's decision on a close evidentiary question cannot be an abuse of discretion. *Thorpe*, 504 Mich at 252. However, preliminary questions of law regarding the admission of evidence, such as the interpretation of a rule of evidence, are reviewed de novo. *Denson*, 500 Mich at 396. Likewise, we review de novo questions of constitutional law. *People v Hughes*, 506 Mich 512, 522; 958 NW2d 98 (2020). As a result, the trial court's ultimate ruling at a suppression hearing is reviewed de novo. *People v Pagano*, 507 Mich 26, 31; 967 NW2d 590 (2021).

We review for clear error the trial court's factual findings underlying its decision to grant or deny the motion to suppress evidence. *People v Attebury*, 463 Mich 662, 668; 624 NW2d 912 (2001). A finding of fact is clearly erroneous if we are left with a definite and firm conviction that the trial court made a mistake. *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2019). We

also note that when the trial court record includes a video recording of the events in question, this Court is not obligated to rely upon the trial court's conclusions regarding the content of the video. *People v Campbell*, 329 Mich App 185, 193; 942 NW2d 51 (2019).

## B. SEARCH AND SEIZURE

Both the United States Constitution and the Michigan Constitution guarantee the right of persons to be free from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11; *Pagano*, 507 Mich at 31-32. A search occurs when "the government intrudes on an individual's reasonable, or justifiable, expectation of privacy," and property is seized when "there is some meaningful interference with an individual's possessory interest in that property." *People v Woodard*, 321 Mich App 377, 383; 909 NW2d 299 (2017) (quotation marks and citations omitted).

Whether a search is lawful depends upon whether it is reasonable. *People v Mahdi*, 317 Mich App 446, 457; 894 NW2d 732 (2016). The reasonableness of a search and seizure is fact specific and is determined by examining the totality of the circumstances. *People v Williams*, 472 Mich 308, 314; 696 NW2d 636 (2005). Generally, a search conducted without a warrant is presumptively unreasonable, and therefore unconstitutional. *People v Wheeler*, 336 Mich App 361, 365; 970 NW2d 438 (2021). The United States Supreme Court, however, has created exceptions to the general rule that warrantless searches are unreasonable by "balanc[ing] the governmental interest that justifies the intrusion against an individual's right to be free of arbitrary police interference." *People v Faucett*, 442 Mich 153, 158; 499 NW2d 764 (1993). Searches excepted from the warrant requirement include searches incident to an arrest, automobile searches and seizures, plain view seizure, consent, stop and frisk, and exigent circumstances. *People v Davis*, 442 Mich 1, 10; 497 NW2d 910 (1993). Another exception to the search warrant requirement is an inventory search performed by police in accordance with established procedures. *People v Slaughter*, 489 Mich 302, 311; 803 NW2d 171 (2011). To demonstrate that a search was reasonable, the police must establish either that they obtained a warrant to search or that the search fell within an exception to the warrant requirement. *People v Kazmierczak*, 461 Mich 411, 418; 605 NW2d 667 (2000).

When evidence is obtained in contravention of the constitutional protections against unreasonable searches, the evidence is subject to exclusion under the judicially created exclusionary rule. *People v Hughes (On Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 338030); slip op at 5. The exclusionary rule, however, is "a harsh remedy designed to sanction and deter police misconduct where it has resulted in a violation of constitutional rights," and should be used only as a last resort, *People v Frazier*, 478 Mich 231, 247; 733 NW2d 713 (2007) (quotation marks and citation omitted), and only where exclusion would further the purpose of deterring police misconduct. *People v Goldston*, 470 Mich 523, 538; 682 NW2d 479 (2004).

## 1. TRAFFIC STOP

Defendant contends that the trial court erred by finding that the officers did not conduct a traffic stop of the Mitsubishi. Defendant argues that the officers conducted a traffic stop without probable cause or reasonable suspicion to support the traffic stop, and that the subsequent search therefore was unconstitutional. We disagree.

One exception to the warrant requirement is the search of an automobile. No warrant is required to search an automobile if the police have probable cause to believe that the vehicle contains contraband. See *Kazmierczak*, 461 Mich at 422. "Probable cause exists when the facts and circumstances known to the police officers at the time of the search would have led a reasonably prudent person to believe that a crime has been or is being committed and the evidence will be found in a particular place." *People v Beuschlein*, 245 Mich App 744, 750; 630 NW2d 921 (2001). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity." *People v Nguyen*, 305 Mich App 740, 751-752; 854 NW2d 223 (2014) (quotation marks and citation omitted). The basis for the automobile exception is the mobility of vehicles and the lessened expectation of privacy in an automobile. *California v Carney*, 471 US 386, 391; 105 S Ct 2066; 85 L Ed 2d 406 (1985).

To be valid, however, any investigatory stop must be justified at its inception. *People v Soulliere*, ___ Mich ___ (2022) (Docket No. 163710). Generally, the decision by police to stop an automobile is reasonable if the police have probable cause to believe that a traffic violation has occurred. *People v Kavanaugh*, 320 Mich App 293, 299; 907 NW2d 845 (2017). "[W]hen there is probable cause to believe that the driver has violated a traffic law, it is constitutional to briefly detain the driver for purposes of addressing the violation even if the officer's subjective intent for stopping the car is based on other factors." *Id*. A traffic stop also is justified if the officer has "an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law." *People v Simmons*, 316 Mich App 322, 326; 894 NW2d 86 (2016) (quotation marks and citation omitted). "Whether an officer has a reasonable suspicion to make such an investigatory stop is determined case by case, on the basis of an analysis of the totality of the facts and circumstances." *People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005).

Every traffic stop of a vehicle by police constitutes a seizure of the people within the vehicle. *People v Anthony*, 327 Mich App 24, 38; 932 NW2d 202 (2019). "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren v United States*, 517 US 806, 809-810; 116 S Ct 1769; 135 L Ed 2d 89 (1996). However, "[i]f there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed." *Florida v Royer*, 460 US 491, 498; 103 S Ct 1319; 75 L Ed 2d 229 (1983) (opinion by WHITE, J.).

In *Anthony*, this Court explained that a traffic stop occurs when police divert a vehicle from the path of traffic to the side of the road. "A traffic stop necessarily curtails the travel a passenger has chosen just as much as it halts the driver, diverting both from the stream of traffic to the side of the road." *Anthony*, 327 Mich App at 37, quoting *Brendlin v California*, 551 US 249, 257, 263; 127 S Ct 2400; 168 L Ed 2d 132 (2007) (stating that the defendant "was seized from the moment [the] car came to a halt on the side of the road"). In *Anthony*, police officers investigated a pickup truck parked on the side of a street because the officers determined that it was impeding traffic. The officers drove to where the pickup was parked and pulled alongside the truck. The patrol car had its windows down and the pickup truck had at least one window partially down. One of the officers testified that as the patrol car approached the pickup truck he could smell the strong odor of burning marijuana. The officers got out of the patrol car and approached the pickup truck, then ordered the defendant driver and a passenger out of the truck. The officers thereafter searched the

truck and found residue of smoked marijuana in a cupholder inside the truck and a .45 caliber pistol. *Anthony*, 327 Mich App at 30.

The defendant was charged with felon in possession of a firearm and ammunition, carrying a concealed weapon, and possession of a firearm during the commission of a felony. *Id*. at 28. Following an evidentiary hearing, the trial court suppressed the evidence of the gun finding that the justification for the search was pretextual, then dismissed the case without prejudice. This Court granted the prosecution leave to appeal and reversed the trial court's order suppressing the gun. This Court held that the defendant was not seized and the Fourth Amendment was not implicated until after the officers detected the odor of marijuana, and that the officers therefore had probable cause to conduct the subsequent search of the pickup truck. *Id*. at 41-42.

This Court explained that the officers had not conducted a traffic stop of the pickup truck because the pickup truck was already stopped when the officers approached it. *Id*. at 27. The patrol car driving toward the pickup truck and thereafter pulling alongside the truck were actions by officers that did not implicate the Fourth Amendment because the officers needed no level of justification to take those actions, and the defendant was not seized by those actions. This Court further discussed that the manner in which the patrol car parked beside the pickup truck was not sufficient to constitute a seizure because the pickup truck was not totally blocked in by the patrol car. This Court observed that even in cases where police had activated the overhead lights of their patrol car, that action was found to be not sufficiently coercive to transform an encounter into a compulsory stop. *Id*. at 40.

As in *Anthony*, the officers in this case did not conduct a traffic stop of the Mitsubishi; the officers did not curtail defendant's travel nor divert defendant from the stream of traffic to the side of the road. The record indicates that the officers followed the Mitsubishi west on Clay Street and south on Superior Street. Following the Mitsubishi on public streets was not a traffic stop and did not implicate the Fourth Amendment; officers do not require justification to drive down a street, and no seizure occurred when the officers in this case followed the Mitsubishi. See *Anthony*, 327 Mich App at 35-37 (no seizure occurred when officers drove down a street toward the defendant's vehicle). From Clay Street, Trooper Fields saw the Mitsubishi turn south on Superior Street, then turn abruptly to the right, drive between two parked cars, drive over the curb and the sidewalk, and park in the lawn of a house. Trooper Fields activated the patrol car's emergency lights, drove up behind the stopped Mitsubishi and parked the patrol car. Because the Mitsubishi was already stopped, the officers did not "interfere with or impede any ongoing driving by defendant; at most, [their] actions could have affected future driving by defendant, necessitating a different analysis." *Anthony*, 327 Mich App at 38.

In addition, the officers in this case did not conduct a "traffic stop" or otherwise seize the vehicle or its occupants merely by parking behind the stopped Mitsubishi. Generally, a "seizure" occurs within the meaning of the Fourth Amendment when a reasonable person would have believed that he or she was not free to leave. *Id*. at 33. When an officer's car does not totally block a parked car and the car, albeit with maneuvering, could leave, a person in the partially blocked car is not seized. *Id*. at 38-40, citing *United States v Carr*, 674 F3d 570, 572-573 (CA 6, 2012). Here, Trooper Fields pulled the patrol car behind the stopped Mitsubishi, blocking the Mitsubishi from backing out via the spot where the patrol car was parked. A review of the dashcam video suggests that with maneuvering, the Mitsubishi could have left the lawn and returned to the

street. In addition, the patrol car's dashcam video recording suggests that the Mitsubishi could have pulled forward between the houses to the area behind the houses. This is confirmed by the conversation between Beard and Trooper Fields, as recorded by the patrol car's dashcam, in which Beard commented to the officer that if he had wanted to evade the patrol car he could have fled by simply driving forward between the two houses.

The manner in which the officer parked the patrol car in this case therefore did not constitute a seizure of the occupants of the Mitsubishi. See *Anthony*, 327 Mich App at 40. As a result, up to that point the encounter between the officers and defendant did not implicate the Fourth Amendment. See *id*. at 35-37. The officers did not require any level of justification to follow the Mitsubishi and park behind it, and the protections of the Fourth Amendment therefore were not triggered. See *id*. at 41. As a result, whether the driver of the Mitsubishi violated any traffic laws[2] or whether the officers had reasonable suspicion that he had done so was not relevant. Those issues are relevant to determining whether officers were justified under the Fourth Amendment to conduct a traffic stop, but a traffic stop had not occurred. See *id*. at 41. Beard had parked the Mitsubishi before the officers' arrival.

## 2. INVESTIGATORY STOP

As discussed, if no seizure has occurred within the meaning of the Fourth Amendment, no Fourth Amendment protections have been infringed. *Roye*r, 460 US at 498 (opinion by WHITE, J.). In this case, no seizure had occurred at the point the officers stopped their patrol car behind the Mitsubishi. A few minutes later, however, the officers arrested defendant, so it is apparent that at some point defendant was seized. See *Anthony*, 327 Mich App at 34.

After stopping the patrol vehicle behind the Mitsubishi, the officers got out of their patrol vehicle and approached the car. Upon discovering that Beard and defendant were in the Mitsubishi, Trooper Fields asked Beard why he had driven over the curb and sidewalk and parked in the yard of a house. Beard responded that he lived in the house next door and routinely parked in that spot. Trooper Fields testified that while talking with Beard, he smelled a strong odor of alcohol emanating from the Mitsubishi. The officer therefore directed Beard to get out of the Mitsubishi, and Beard complied.

Law enforcement officers do not violate the Fourth Amendment by approaching a person in a public place or by asking the person questions. *Anthony*, 327 Mich App at 32. "An officer does not need any level of justification to approach an individual on a public street." *Id*. at 35. This is in keeping with the purpose of the Fourth Amendment, which "is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *United States v Mendenhall*, 446 US 544, 553-554; 100 S Ct 1870; 64 L Ed 2d 497 (1980) (citation omitted). When an officer approaches a person in a public place and questions the person, the person is not considered to be detained and there is no seizure of the person within the meaning of the Fourth Amendment. *Anthony*, 327 Mich App at 33, citing *Royer*, 460 US at 497 (opinion by WHITE, J.).

---

[2] As the trial court observed, however, the officers had ample evidence to stop the Mitsubishi for careless or reckless driving.

In this case, by approaching the Mitsubishi and speaking with Beard, Trooper Fields did not implicate the Fourth Amendment; his conversation with Beard was not a search or seizure, and neither Beard nor defendant was seized.

However, when Trooper Fields directed Beard to get out of the Mitsubishi, Beard was temporarily detained. Another exception to the warrant requirement is an investigatory stop, also known as a *Terry* stop, referencing *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). *Pagano*, 507 Mich at 32. Under this doctrine, in appropriate circumstances and in an appropriate manner, if a police officer has a reasonable and articulable suspicion to believe a person has committed or is committing a crime, the officer may approach the person "for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Id.*, quoting *Terry*, 392 US at 22. "A brief, on-the-scene detention of an individual is not a violation of the Fourth Amendment as long as the officer can articulate a reasonable suspicion for the detention." *Pagano*, 507 Mich at 32 (quotation marks and citation omitted).

Whether an officer has reasonable and articulable suspicion to justify detaining a person is a fact-specific inquiry determined case by case and should be based on "commonsense judgments and inferences about human behavior." *Id.* Reasonable and articulable suspicion requires a showing less than probable cause, but it "entails something more than an inchoate or unparticularized suspicion or hunch." *Id.*, quoting *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996). "In determining reasonableness, the court must consider whether the facts known to the officer at the time of the stop would warrant an officer of reasonable precaution to suspect criminal activity." See *People v Mazzie*, 326 Mich App 279, 292; 926 NW2d 359 (2018). During an investigatory stop, the scope of any search must be limited to what is necessary to quickly confirm or dispel the suspicion of the officer. *People v Barbarich*, 291 Mich App 468, 473; 807 NW2d 56 (2011).

Here, Trooper Fields observed the Mitsubishi leave the road at a high rate of speed, drive over the curb and sidewalk, and come to a stop in the front yard of a house. After approaching the Mitsubishi and while talking with Beard, Trooper Fields smelled a strong odor of alcohol emanating from the car. At that point, based upon the strong odor of alcohol and the reckless driving witnessed by the officer, the officer had reasonable and articulable suspicion that there were open intoxicants in the car and/or that the driver had been driving while under the influence of alcohol, and thus had reasonable suspicion to briefly detain Beard, and to perform a search to confirm or dispel his suspicions. See *id.* Indeed, at that point in the encounter the officer had probable cause to search the vehicle. See *Kazmierczak*, 461 Mich at 421 (the odor of contraband alone, if smelled by a qualified person, can be sufficient to justify a finding of probable cause).

To summarize, the events in this case began with police following the Mitsubishi on the public roads. The police do not need a justification to follow a car on the public roads, and the Fourth Amendment therefore was not implicated. Next, the police parked behind the stopped Mitsubishi. Because the patrol car did not completely block in the Mitsubishi, the Mitsubishi could have driven away either forward or backward; neither the car nor its occupants were seized at this point and the Fourth Amendment was not implicated. The officers then approached the stopped Mitsubishi on foot and Trooper Fields engaged in a consensual conversation with Beard. The officers did not need any level of justification to approach Beard and defendant as they sat in a car next to the public sidewalk, so no Fourth Amendment protections were implicated. See *Anthony*,

327 Mich App at 40-41. Upon detecting the strong smell of alcohol emanating from the Mitsubishi, and in light of the reckless driving of the Mitsubishi Trooper Fields had observed, the officers at that point had reasonable, articulable suspicion to briefly detain Beard as part of an investigatory stop and had probable cause to search the car. The search of the car did not violate the Fourth Amendment protections against unreasonable searches and seizures, and accordingly, there is no basis for suppressing at trial the evidence seized during the search. See *id.* at 42. The trial court therefore did not err by denying defendant's motion to suppress the evidence discovered during the search of the Mitsubishi.[3]

## 3. LENGTH OF DETENTION

Defendant contends that even if probable cause supported the search, his Fourth Amendment rights were violated because he was detained by the officers for a prolonged period. We disagree.

As discussed, when police temporarily detain a person and restrain that person's freedom to leave, the person has been seized under the Fourth Amendment. *Terry*, 392 US at 16; see also *Anthony*, 327 Mich App at 33. However, the Constitution forbids only unreasonable seizures; a brief stop by police in order to maintain the status quo momentarily while the police obtain information may be reasonable. Analogizing a *Terry* stop with a traffic stop, the United States Supreme Court has explained that "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission [.]' " *Rodriguez v United States*, 575 US 348, 354; 135 S Ct 1609; 191 L Ed 2d 492 (2015). Authority for the stop ends when "tasks tied to the traffic infraction are—or reasonably should have been—completed," but includes ordinary inquiries incident to the stop. *Campbell*, 329 Mich App at 197. However, "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez*, 575 US at 350.

---

[3] Because we conclude that there was no basis to suppress the evidence, we need not reach the trial court's additional finding that the search of the Mitsubishi was a valid inventory search. Under the inventory search exception, the police may conduct a search of a vehicle that is being impounded. *People v Toohey*, 438 Mich 265, 271-272; 475 NW2d 16 (1991). An inventory search is excepted from the warrant requirement because it is considered an administrative function performed by the police, rather than a search conducted as part of a criminal investigation triggering Fourth Amendment application. *Id.* To be a valid exception to the warrant requirement, an inventory search must be conducted in accordance with established departmental regulations and may not be used as a pretext for criminal investigation. *Id.* at 276. The legality of an inventory search partially depends on whether officers legally impounded a vehicle and "whether there were standardized criteria, policies, or routines regulating how inventory searches were to be conducted." *People v Poole*, 199 Mich App 261, 266; 501 NW2d 265 (1993). In this case, Trooper Fields testified that after Beard told him that the car was a rental car not leased to him, he determined to tow the Mitsubishi in accordance with the department's policy, which required Trooper Fields to conduct an inventory search in preparation to tow the vehicle.

In this case, the investigatory stop began when Trooper Fields directed Beard to get out of the Mitsubishi. According to the patrol car's dashcam video, for the next approximately two minutes, Trooper Fields talked with Beard, obtained his driver's license, and learned that the Mitsubishi was a rental vehicle that Beard had not leased. Trooper Fields then spoke with defendant and again observed that the Mitsubishi had a strong odor of alcohol. Trooper Fields then directed defendant to get out of the car and officers immediately searched the car. Less than one minute later, the officers discovered the guns. From the time Trooper Fields asked Beard to get out of the car to the time the guns were discovered approximately three and a half minutes passed according to the patrol vehicle's dashcam video. During that time, Trooper Fields asked reasonable questions regarding his suspicions raised by Beard's driving and by the strong odor of alcohol in the Mitsubishi. The officers did not unreasonably extend the stop and defendant was not detained for a prolonged time; indeed, it is difficult to envision the officers performing their duties more quickly. We therefore conclude that the trial court did not err when it determined that the length of defendant's detention was not unreasonably prolonged.

## 4. EXPECTATION OF PRIVACY

We further conclude that defendant lacks standing to challenge the propriety of the search in this case. A defendant may attack the propriety of a search and seizure only if he or she demonstrates standing to challenge the search. *People v Earl*, 297 Mich App 104, 107; 822 NW2d 271 (2012). To demonstrate standing to invoke the Fourth Amendment's protections against unreasonable searches and seizures, the person invoking those protections must first establish that, considering the totality of the circumstances, he or she had a legitimate expectation of privacy in the area searched. *People v Mead*, 503 Mich 205, 212-213; 931 NW2d 557 (2019). To be a legitimate expectation, the expectation of privacy in the area searched must be one that society is prepared to recognize as reasonable. *Id*. Thus, standing exists when, considering the totality of the circumstances, the defendant had a legitimate expectation of privacy, meaning an expectation of privacy that society is prepared to recognize as reasonable, in the object of the search and seizure. *Id*.

Typically, a passenger does not have a legitimate expectation of privacy in someone else's car. *Id*. As a result, when the stop of a vehicle is legal, a passenger with no property interest or possessory interest in the vehicle usually does not have standing to contest the search of the vehicle. *Earl*, 297 Mich App at 108. To assert a Fourth Amendment violation arising from the search of the car of another, a passenger in that car must demonstrate that under the totality of the circumstances he or she had a legitimate expectation of privacy in the area searched, meaning that he or she had an expectation of privacy that society is prepared to recognize as reasonable. *Mead*, 503 Mich at 214 (holding that a passenger in a vehicle had a legitimate expectation of privacy in his backpack which he held on his lap while a passenger in another person's car).

In this case, one of the guns was discovered under the front passenger seat and one was found between the front passenger seat and the center console. Defendant has not demonstrated that, under the totality of the circumstances, he had a legitimate expectation of privacy, being one that society is prepared to recognize as reasonable, in the area where the guns were found. *Mead*, 503 Mich at 214. Rather, a defendant is deemed ordinarily to have no legitimate expectation of privacy in the interior of a car that does not belong to him or her. *Id*. Because we conclude that defendant in this case had no legitimate expectation of privacy in the interior of the Mitsubishi,

defendant lacks standing to assert a violation of the Fourth Amendment prohibition against unreasonable searches and seizures. *Mead*, 503 Mich at 212-213. The trial court therefore did not err by denying defendant's motion to suppress evidence of the guns.

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola